[Cite as *State v. Chapman*, 2018-Ohio-4560.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2018-03-046 |
| | : | O P I N I O N |
| - vs - | | 11/13/2018 |
| | : | |
| ERIC DEON CHAPMAN, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2017-03-0557


Michael T. Gmoser, Butler County Prosecuting Attorney, John C. Heinkel, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Michele Temmel, 6 S. Second St., #305, Hamilton, Ohio 45011, for defendant-appellant


**S. POWELL, P.J.**

{¶ 1} Defendant-appellant, Eric Deon Chapman, appeals from his conviction in the Butler County Court of Common Pleas after a jury found him guilty of felonious assault with an attendant three-year firearm specification. For the reasons outlined below, we affirm in part, reverse in part, and hereby vacate Chapman's conviction and sentence on the charged three-year firearm specification as that conviction is not supported by sufficient evidence. In all other respects, Chapman's conviction is affirmed.

**Facts and Procedural History**

{¶ 2} On April 5, 2017, the Butler County Grand Jury returned an indictment charging Chapman with felonious assault in violation of R.C. 2903.11(A)(1), a second-degree felony. The charge included an attendant three-year firearm specification as provided by R.C. 2941.145(A). According to the bill of particulars, the felonious assault charge arose after Chapman caused serious physical harm to his then long-term live-in girlfriend, L.B., by inflicting several blows to her head with a firearm he used as a "bludgeon." The blows to L.B.'s head resulted in numerous, significant injuries to L.B.'s person. These injuries included a concussion from which L.B. suffers a permanent disability. Chapman pled not guilty and the matter proceeded to a two-day jury trial.

{¶ 3} At trial, although admittedly having significant memory loss, L.B. testified she sustained severe and debilitating head injuries as a result of Chapman "jumping on" her while she and Chapman were "getting into it[.]" Thereafter, upon being shown photographs of herself in the hospital, L.B. testified the photographs depicted the side of her head where she was "beat at" by Chapman. L.B. also testified she remembered "[Chapman] hitting [her] with something," but that she was unsure of what object Chapman used. Specifically, as L.B. testified, "[w]e know that he had hit me on the head with something."

{¶ 4} In addition to this testimony, when asked on cross-examination if she ever recalled telling anyone that "a woman or some women" caused her injuries, L.B. testified "No, sir. * * * I don't even know why I would say a woman did it." Rather, L.B. testified to the identity of the perpetrator who caused her injuries as follows:

Q: Do you know where you were when you were injured?

A: At home.

Q: Do you recall who was home with you when you got hurt?

A: [Chapman.]

{¶ 5} Chapman's sister, E.C., then testified. E.C. testified Chapman spoke with her the day after his incident with L.B. During this conversation, Chapman told E.C. "he messed up, * * * messed up really bad[.]" Uncertain of what Chapman was referring to, E.C. asked Chapman what happened. E.C. testified that in response, Chapman told her "[L.B.] just kept talking. And he told her to be quiet." To this, E.C. testified Chapman told her L.B. retorted back that she was "not going to be quiet, you know, like I said, just kept going back and forth." E.C. then testified Chapman admitted to the following:

> A: * * * And so he said they just kept going on, and so he's starting to get angry, and he told her to be quiet or I'm going to pistol whip you with this gun, and she said no, you won't, and she's like do it then. So I guess he said he just snapped.
>
> Q: And did what?
>
> A: He said he took the gun and hit her at least four blows into the head.

According to E.C., in explaining further his actions in beating L.B., Chapman told her that "he took the gun, like the handle base part with his fist and just hit [L.B.] like about four times." There was no evidence, however, indicating Chapman ever pointed the firearm at L.B. or threatened to shoot L.B. with the firearm.

{¶ 6} Following her conversation with Chapman, E.C. spoke with her uncle, a retired police officer, and later to a detective with the Hamilton Police Department. The record indicates Chapman was subsequently arrested and held in the Butler County Jail pending trial. E.C. testified Chapman telephoned her from jail and told her "to forget that we had our conversation." An audio recording of this conversation admitted into evidence corroborated E.C.'s testimony regarding her telephone conversation with Chapman.

{¶ 7} In his defense, Chapman testified he and L.B. were at their apartment drinking when at approximately 1:30 a.m. L.B. left the apartment to go to a "bootleg place" to get more alcohol. According to Chapman, L.B. staggered back into their apartment

approximately one hour later with a bloody nose. Seeing L.B. with a bloody nose, Chapman asked L.B. what happened. L.B. responded that she had been "jumped." However, according to Chapman, L.B. could not remember where she was jumped, who jumped her, or even how many people jumped her. Chapman testified he then asked L.B. if she wanted him to call for an ambulance to take her to the hospital. Chapman testified that L.B. declined and instead told him she would just sleep it off.

{¶ 8} After L.B. denied Chapman's request to call an ambulance, Chapman then escorted L.B. to their bedroom and helped her into bed. Once L.B. was in bed, Chapman went back to the living room to watch television. Chapman testified he then returned to their bedroom several hours later. The next morning, L.B. did not get up to smoke her morning cigarette. When L.B. did not get out of bed, Chapman went into their bedroom and told L.B. that if she was not feeling better when he returned that afternoon that he would call for an ambulance to take her to the hospital.

{¶ 9} Upon returning to their apartment that afternoon, Chapman discovered L.B. still in bed and that she had urinated on herself. Seeing that L.B. needed medical attention, Chapman then called for an ambulance and L.B. was taken to the hospital. Thereafter, when asked if he was the perpetrator who caused L.B.'s injuries, Chapman testified that he never hit L.B. in the head with a firearm as alleged. Chapman also denied that he had ever told his sister, E.C., that he had hit L.B. in the head with a firearm as E.C. testified. It is undisputed that the firearm Chapman was alleged to have used as a "bludgeon" to beat L.B. over the head was never recovered.

{¶ 10} Following deliberations, the jury returned a verdict finding Chapman guilty of both the felonious assault and the attendant three-year firearm specification. The trial court then sentenced Chapman to a total aggregate 11-year prison term; specifically, eight years for the felonious assault charge to be served consecutively to a mandatory three-year prison

term for the attendant firearm specification. Chapman now appeals from his conviction, raising the following single assignment of error for review.

{¶ 11} THE EVIDENCE WAS INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTION, AND THE VERDICT WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 12} In his single assignment of error, Chapman argues his felonious assault conviction was not supported by sufficient evidence and was otherwise against the manifest weight of the evidence. Chapman also argues his conviction for the attendant three-year firearm specification was not supported by sufficient evidence.

**Standard of Review**

{¶ 13} Whether the evidence presented is legally sufficient to sustain a verdict is a question of law. *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Intihar*, 12th Dist. Warren CA2015-05-046, 2015-Ohio-5507, ¶ 9. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. In other words, "the test for sufficiency requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34, citing *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 33. When evaluating the sufficiency of the evidence, this court must view all evidence in the light most favorable to the state and "defer to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Kirkland*, 140 Ohio St.3d

73, 2014-Ohio-1966, ¶ 132.

{¶ 14} On the other hand, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34.

{¶ 15} These issues, however, "are primarily matters for the trier of fact to decide since the trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given the evidence." *State v. Walker*, 12th Dist. Butler App. No. CA2006-04-085, 2007-Ohio-911, ¶ 26. As a result, "the question upon review is whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *Grinstead*, 2011-Ohio-3018 at ¶ 11. An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Blair*, 12th Dist. Butler No. CA2014-01-023, 2015-Ohio-818, ¶ 43.

{¶ 16} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380 (1997), paragraph two of the syllabus. Nevertheless, although the two concepts are different, a finding that a conviction is supported by the manifest weight of the evidence is

also dispositive of the issue of sufficiency. *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19. Therefore, "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *State v. Hart*, 12th Dist. Brown No. CA2011-03-008, 2012-Ohio-1896, ¶ 43.

**Analysis: Felonious Assault**

{¶ 17} Chapman initially argues his felonious assault conviction must be reversed since the only evidence that implicated him in the crime was the "questionable testimony" from E.C., his "'sometimes' estranged sister." Chapman, however, ignores the testimony offered by L.B., who, as noted above, identified him as the perpetrator who caused her injuries by jumping on her, beating her, and hitting her in the head with some unknown object. Specifically, as L.B. testified when identifying the perpetrator who caused her injuries:

> Q: Do you know where you were when you were injured?
>
> A: At home.
>
> Q: Do you recall who was home with you when you got hurt?
>
> A: [Chapman.]

Therefore, contrary to Chapman's claim, E.C.'s testimony was not the only evidence elicited at trial that implicated him in the crime. Chapman's claim otherwise lacks merit.

{¶ 18} The jury returned a verdict finding Chapman guilty of felonious assault. The jury, therefore, clearly found L.B.'s testimony identifying him as the perpetrator who caused L.B.'s injuries credible, whereas Chapman's own testimony denying any involvement in the crime was not. It is well-established that it is the trier of fact who makes determinations of credibility and the weight to be given to the evidence presented at trial. *State v. Erickson*, 12th Dist. Warren No. CA2014-10-131, 2015-Ohio-2086, ¶ 42, citing *State v. DeHass*, 10

Ohio St.2d 230 (1967), paragraph one of the syllabus.

{¶ 19} It is equally well-established that a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the testimony of the state's witnesses. *State v. Crossty*, 12th Dist. Clermont Nos. CA2017-01-003 thru CA2017-01-005, 2017-Ohio-8267, ¶ 68. "As the trier of fact is in the best position to judge the credibility of the witnesses, we will not disturb the [jury's] finding in regard to which version of events was credible, and which was not." *State v. Bonner*, 12th Dist. Butler No. CA2012-09-195, 2013-Ohio-3670, ¶ 13. Therefore, based on the record properly before this court, we find Chapman's felonious assault conviction was supported by sufficient evidence and otherwise not against the manifest weight of the evidence.

**Analysis: Three-Year Firearm Specification**

{¶ 20} Chapman next argues the jury's finding him guilty of the attendant three-year firearm specification was not supported by sufficient evidence since the state offered no evidence, either direct or circumstantial, that the firearm he used as a "bludgeon" to beat L.B. over the head was operable when the offense occurred. We agree.

{¶ 21} Pursuant to R.C. 2941.145, the trial court must impose a mandatory three-year prison term if the offender is found to have "had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." As defined by R.C. 2923.11(B)(1), the term "firearm" means "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." This includes "an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." R.C. 2923.11(B)(1). "Thus, operability is an essential element of the offense." *State v. Kovacic*, 11th Dist. Ashtabula No. 2002-A-0032, 2003-Ohio-5219, ¶ 23; *State v. Griffith*, 12th Dist. Warren No.

CA97-02-018, 1997 App. LEXIS 3657, *5 ("proof that the firearm used during the commission of the offenses was operable" is an "essential element of firearm specifications").

{¶ 22} "To sustain a firearm specification, the state must prove beyond a reasonable doubt that the defendant possessed a firearm and that [the firearm] was operable at the time of the offense." *State v. Montoya*, 12th Dist. Clermont No. CA2012-02-015, 2013-Ohio-3312, ¶ 35, citing *State v. Murphy*, 49 Ohio St.3d 206 (1990), syllabus. In determining whether a firearm was operable, the trier of fact, in this case the jury, "'may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm.'" *State v. Rigdon*, 12th Dist. Warren No. CA2006-05-064, 2007-Ohio-2843, ¶ 22, quoting *Thompkins*. Such a proposition is confirmed by R.C. 2923.11(B)(2), which states that "the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm" in determining whether a firearm is operable.

{¶ 23} It is undisputed the firearm Chapman displayed and then used as a "bludgeon" to beat L.B. over the head was not recovered. Because the firearm was not recovered the state was foreclosed from determining through testing whether the firearm was operable, or capable of being readily rendered operable, when the offense occurred. However, although the firearm was not recovered, it is well-established that the state need not produce the firearm or offer direct, empirical evidence that the firearm was operable. *State v. Minter*, 12th Dist. No. CA2009-06-150, 2010-Ohio-594, ¶ 15. Rather, as this court has stated previously, "'a firearm penalty-enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence.'" *State v. Wilson*, 12th Dist. Clermont No. CA2001-09-072, 2002-Ohio-4709, ¶ 38, quoting *Thompkins*, 78 Ohio St.3d at 385. Proof of the operability of the firearm can also be established by "the circumstances surrounding

the crime." *Murphy*, 49 Ohio St.3d at syllabus.

{¶ 24} According to the state, the evidence elicited at trial, if believed, sufficiently established that the firearm in question was operable, or capable of being readily rendered operable, at the time the offense occurred. The evidence in this case, however, merely indicated Chapman became angry with L.B. while talking with her when he "told [L.B.] to be quiet or I'm going to *pistol whip* you with this gun[.]" (Emphasis added.) Thereafter, when L.B. questioned Chapman's threat, E.C. testified Chapman told her that "he took the gun, like the handle base part with his fist and *just hit* [L.B.] like about four times." (Emphasis added.) The evidence, therefore, did not in any way indicate the firearm Chapman used to beat L.B. over the head was operable, or capable of being readily rendered operable, in that Chapman neither explicitly nor implicitly threatened to shoot L.B. at the time the offense occurred.

{¶ 25} The state argues the facts of this case are analogous to those faced by the Tenth District Court of Appeals in *State v. Patterson*, 10th Dist. Franklin No. 15AP-1117, 2016-Ohio-7130. In that case, however, the record indicates the appellant not only hit the victim repeatedly with a firearm but that the appellant also "put the gun to [the victim's] forehead, chin, chest, nose, and mouth[.]" *Id.* at ¶ 55. The Tenth District, therefore, justifiably found that "the actions of appellant reasonably may be interpreted as an implicit threat that the victim would be shot," thereby presenting "sufficient evidence to support the operability of the firearm and the firearm specification conviction." *Id.* at ¶ 56.

{¶ 26} Unlike in *Patterson*, the record in this case indicates Chapman neither explicitly nor implicitly threatened to shoot L.B. at the time the offense occurred. Rather, as noted above, Chapman merely threatened to, and in fact did, "pistol whip" L.B. with the firearm by hitting L.B. in the head approximately four times. Therefore, contrary to the state's claim otherwise, the facts in *Patterson* are readily distinguishable from the case at

bar. *See also State v. Bryant*, 11th Dist. Trumbull No. 2015-T-0100, 2016-Ohio-4928, ¶ 42 (sufficient evidence presented that firearm was operable through an implicit threat where appellant held the firearm to victim's head before hitting victim in the back of his head with the firearm while robbing the victim); *but see State v. Storey*, 8th Dist. Cuyahoga No. 92946, 2010-Ohio-1664, ¶ 13 (firearm specification affirmed where injuries sustained by the victim "were consistent with having been struck with a hard object, such as a gun").

{¶ 27} The plain language found in R.C. 2941.145(A), the firearm specification statute, indicates the General Assembly intended a harsher penalty when an offender "displayed" or "used" a firearm to facilitate the charged offense at the time the offense occurred. However, although there can be no doubt that Chapman "displayed" and then "used" a firearm as a "bludgeon" to beat L.B. over the head in a more general sense, under the law of this state, to sustain a firearm specification, the state must prove beyond a reasonable doubt that the defendant possessed a firearm that was operable, or capable of being readily rendered operable, at the time the offense occurred. In this case the state failed to meet its burden. *See, e.g., State v. Clayton*, 9th Dist. Summit No. 26910, 2014-Ohio-2165, ¶ 13 (sufficient evidence presented that firearm was operable through an implicit threat where "witnesses testified that the defendant was holding a gun to their heads while they were being robbed of their money and personal effects"); *State v. Jackson*, 11th Dist. Lake No. 2012-L-061, 2013-Ohio-4846, ¶ 47-48 (sufficient evidence presented that firearm was operable through both explicit and implicit threats where appellant pointed a firearm at the victims and threatened to shoot if the victims did not comply with his instructions); *State v. Woodson*, 8th Dist. Cuyahoga No. 96538, 2012-Ohio-172, ¶ (sufficient evidence presented that firearm was operable where appellant pointed firearm at the victims and threatened to kill them while pressing firearm against one of the victim's head).

{¶ 28} Simply because Chapman displayed a firearm and then used the firearm as

a "bludgeon" to beat L.B. on the head rather than to shoot her (or threaten to shoot her) does not mean the firearm was operable, or capable of being readily rendered operable, at the time the offense occurred. To hold otherwise would allow for a firearm specification conviction based on mere possession of a firearm alone without any evidence as to the operability of said firearm. Such a holding would be in direct conflict with the plain language used by the General Assembly in crafting the firearm specification statute as found under R.C. 2941.145(A) and the definition of "firearm" as provided by R.C. 2923.11(B)(1). Therefore, based on the law of this state, Chapman's single assignment of error is sustained only to his three-year firearm specification conviction as that conviction is not supported by sufficient evidence.

**Conclusion**

{¶ 29} Based on the facts and circumstances herein, we find Chapman's conviction for felonious assault was supported by sufficient evidence and was otherwise not against the manifest weight of the evidence. The evidence in this case, particularly the testimony from L.B. and E.C., provided sufficient, credible evidence to establish the state's case beyond a reasonable doubt. However, as it relates to the attendant three-year firearm specification, we find the state failed to provide sufficient evidence to prove beyond a reasonable doubt that the firearm Chapman displayed and then used as a "bludgeon" to beat L.B. over the head was operable, or capable of being readily rendered operable, at the time of the offense. Chapman's conviction and sentence on the three-year firearm specification must therefore be reversed and vacated. In all other respects, Chapman's conviction is affirmed.

{¶ 30} Judgment affirmed in part, reversed in part, and Chapman's conviction and sentence on the three-year firearm specification is hereby vacated.

HENDRICKSON and M. POWELL, JJ., concur.

- 12 -