[Cite as *In re S.D.*, 2020-Ohio-941.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: S.D. | : | APPEAL NOS. C-180651 |
| | | C-180652 |
| | : | C-180653 |
| | | C-190011 |
| | : | TRIAL NOS. 17-4008z |
| | | 18-3653z |
| | : | 18-5091z |
| | | |
| | : | *O P I N I O N.* |

Appeals From: Hamilton County Juvenile Court

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: March 13, 2020

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond L. Katz*, for Defendant-Appellant.

**MOCK, Presiding Judge.**

{¶1}     In this case, we are asked to address the limited question of whether the state presented sufficient circumstantial evidence to allow the factfinder to conclude that S.D. had committed an aggravated robbery using a deadly weapon and that the commission of the offense supported an additional one-year term for possessing a firearm while committing the offense.

### Teens Rob Delivery Driver with "Guns"

{¶2}     Mark Brady was a delivery driver for a pizza restaurant.  He arrived at an address in the Price Hill neighborhood of Cincinnati to deliver two pizzas, but no one came to the door.  When the driver called the number on the order, an individual stated that they were in the bathroom and that they would be down shortly.  As the driver waited on the front porch, two individuals approached.  Each individual was holding what the driver reported to be a handgun.  One was black, and the other was grey.  Neither weapon appeared to have an orange tip.  The driver was told not to move, and S.D. approached him.  The driver said that S.D. reached into his pockets and took his money, his wallet, his cell phone, and the pizzas.  The two individuals then fled, and the driver returned to his employer and contacted the police.

{¶3}     The police arrested S.D. first.  S.D. told the police that the gun he was holding was a BB gun, but he believed that the gun held by the other juvenile, D.W., was real.  This was based on how D.W. handled the second gun with care and had explicitly told S.D. that it was a 9 mm handgun.  D.W. was later arrested, but claimed that his gun had also been a BB gun.  The juveniles both admitted that they had thrown the guns away, but would not say where they were.

{¶4}     Under the case numbered 18-3653z, S.D. was accused of being delinquent for having engaged in conduct which, if it had been engaged in by an adult, would have constituted the offense of aggravated robbery in violation of R.C.

2

2911.01(A). Under the case numbered 18-5091z, S.D. was further accused of being delinquent for having engaged in conduct that constituted the offense of robbery in violation of R.C. 2911.02(A)(1). Both offenses required proof that S.D. had a "deadly weapon" during the course of the offense. Additionally, each offense was supplemented with one- and three-year gun specifications pursuant to R.C. 2941.141 and 2941.145.

{¶5} At trial, S.D. admitted to committing the robbery, but denied that he had used an operable firearm during the commission of the offense. The trial was limited to that issue. At the conclusion of the trial, the magistrate determined that S.D. had used an operable firearm and adjudicated him and D.W. delinquent. The magistrate also found that the one-year gun specification applied. S.D. had also been on probation in the case numbered 17-4008z for an unrelated burglary offense. That probation was terminated as a result of the aggravated-robbery adjudication.

### Circumstantial Evidence of Operability

{¶6} In one assignment of error, S.D. claims that his adjudication was based on insufficient evidence and was contrary to the manifest weight of the evidence. In reviewing a challenge to the sufficiency of the evidence, this court must determine whether, after construing all reasonable inferences in favor of the state, any reasonable trier of fact could have found that the state presented evidence to prove each of the essential elements of the offense beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In reviewing a challenge to the weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and

determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *Id.*

{¶7} The only contested issue is whether the state presented sufficient evidence that the gun S.D. was holding during the robbery was an operable firearm. The operability of a firearm may be proven by circumstantial evidence "including, but not limited to, the representations and actions of the individual exercising control over the firearm." R.C. 2923.11(B)(2). "The trier of fact may consider all relevant facts and circumstances surrounding the crime." *Thompkins* at paragraph one of the syllabus. This includes the representations and actions of the individual exercising control over the firearm, including implicit or explicit threats. *Id.* at 383; *State v. Obsaint*, 1st Dist. Hamilton No. C-060629, 2007-Ohio-2661, ¶ 19.

{¶8} In *Thompkins*, the Ohio Supreme Court found the following facts sufficient to show operability of a firearm by circumstantial evidence: the defendant had a black gun in his hand, the victim was frightened, the defendant told the victim that it was a "holdup," the defendant kept telling the victim to go faster, and the defendant told the victim not to call the police for ten minutes. *Id.* at 383. The court found that this was enough, even absent an express threat to shoot the victim. *Id.*

{¶9} In *State v. Potchik*, 2d Dist. Montgomery No. 23865, 2011-Ohio-501, the defendant lifted his shirt and showed the butt end of a gun and, at the same time, asked the victim for money. The victim testified that he did not know anything about guns, but believed that the defendant had a real gun at the time. A video recording of the incident failed to capture an image of the gun. The court found that this evidence was sufficient. *Id.* at ¶ 35.

{¶10} In contrast, this court recently found that the state had failed to show a defendant had possessed an operable firearm during a robbery. *State v. Brown*, 1st Dist. Hamilton No. C-180180, 2019-Ohio-3349. In that case, the defendant walked

4

up to a counter in a store with a bag over his hand. During the course of the robbery, the defendant moved the bag from one hand to another. From the video evidence, the court concluded that it was clear that there was no gun in the bag. This evidence, coupled with the fact that the victim never saw a gun and the defendant never claimed to have a gun, was enough for this court to conclude that the state had presented insufficient evidence of operability. *Id.* at ¶ 16.

{¶11} But the mere possession of a gun, without something more, is not enough to allow for a finding that it is operable. *See State v. Chapman*, 12th Dist. Butler No. CA2018-03-046, 2018-Ohio-4560. In *Chapman*, the defendant used a handgun to bludgeon the victim, which was the only thing that he had threatened to do with the gun. *Id.* at ¶ 28. No other evidence was presented as to operability. The defendant did not point the gun at the victim first, the defendant did not say anything about shooting, and the defendant did not treat the gun as if it were operable. The court found that the state had presented insufficient evidence that the gun was operable. *Id.*

{¶12} The facts in this case are more like those in *Thompkins* and *Potchik* than in *Brown* or *Chapman*. In this case, S.D. and D.W. approached the victim with handguns held at their sides, which is a position one would hold an operable firearm. The victim, who believed the guns were real, was instructed not to move. While the guns were held, S.D. approached the driver, took his personal property, and fled. D.W. told S.D. that the gun he had was real, and D.W. had treated the gun as real and operable prior to the robbery. After the robbery, S.D. and D.W. got rid of the guns so that they could not be found and used in a subsequent prosecution. As the magistrate noted, "people throw real guns away when they don't want to be caught, not BB guns." Unlike in *Brown*, the evidence did n0t show that there was no firearm

present at all. And unlike in *Chapman*, the state presented much more evidence than the simple fact that the defendant had a handgun at the time.

{¶13} Based on *Thompkins*, and consistent with *Potchik*, there was sufficient evidence for the fact finder to conclude that the guns were operable and that finding was not contrary to the manifest weight of the evidence. We overrule S.D.'s sole assignment of error.

## Conclusion

{¶14} The state presented sufficient circumstantial evidence that S.D. possessed an operable firearm when he robbed Brady, and the court's determination was not against the manifest weight of the evidence. We overrule S.D.'s sole assignment of error and affirm the judgments of the trial court.

Judgments affirmed.

**MYERS** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.