[Cite as *In re D.W.*, 2020-Ohio-2707.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: D.W., a minor child. | : | APPEAL NOS. C-180644 |
| | | C-180654 |
| | : | TRIAL NOS. 18-5090 X |
| | | 18-3794 X |
| | : | *O P I N I O N.* |

Appeals From:  Hamilton County Juvenile Court

Judgments Appealed From Are:  Affirmed

Date of Judgment Entry on Appeal:  April 29, 2020

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Alex Scott Havlin*, Assistant Prosecuting Attorney, for Appellee State of Ohio,

*Timothy Young*, Ohio State Public Defender, and *Timothy B. Hackett*, Assistant State Public Defender, for Appellant D.W.

**CROUSE, Judge.**

{¶1} D.W. appeals from judgments of the Hamilton County Juvenile Court that adjudicated him delinquent for having engaged in conduct which, if it had been engaged in by an adult, would have constituted the offense of aggravated robbery with a firearm specification. For the reasons set forth below, we affirm the juvenile court's judgments.

### *Facts and Procedure*

{¶2} In the case numbered 18-3794X, D.W. was accused of being delinquent for committing an act which, if it had been committed by an adult, would have constituted the offense of aggravated robbery in violation of R.C. 2911.01(A). In the case numbered 18-5090X, D.W. was further accused of being delinquent for committing an act which would have constituted the offense of robbery in violation of R.C. 2911.02(A)(1). Each offense was supplemented with one- and three-year gun specifications pursuant to R.C. 2941.141 and 2941.145. Prior to trial, D.W. stipulated to his participation in the robbery. However, he elected to proceed to a joint bench trial with S.D. on the aggravated-robbery charge and the firearm specifications; the key inquiry at trial being whether they used firearms during the offense.

{¶3} At trial, the state presented the testimony of Mark Brady and Detective Joseph Coombs. Brady, a pizza delivery driver, testified that he went to an address in the Price Hill neighborhood of Cincinnati to make a delivery. When he knocked on the door, no one answered. According to Brady, he called the number associated with the order and an unidentified individual told him to "wait there, I'm in the bathroom."

{¶4} As Brady waited, three people approached him. Brady testified, "One was standing by my car, and one was on the corner of the street, and one come up to

me." According to Brady, two of the individuals were holding what he believed to be firearms. Brady described one as a black pistol and one as a gray gun with holes in the barrel. Brady denied seeing orange tips on either of the guns, which would have been indicative of BB guns.[1] Brady testified that one of the individuals instructed him not to move while the guns were visibly held at the individuals' sides. The individual later identified by Brady as S.D. then reached into Brady's pockets, took his money, his wallet, his phone, and the pizzas, and fled. Brady returned to work and contacted the police.

{¶5} Coombs, a member of the Cincinnati Police Investigative Unit, testified that he questioned S.D. and D.W. about their interaction with Brady. According to Coombs, S.D. admitted his involvement in the robbery, but denied having a firearm. S.D. also identified D.W. as the person who placed the delivery order and stated that D.W. was armed with what S.D. believed to be a 9 mm handgun. According to Coombs, D.W. also admitted his involvement in the robbery, but maintained that he had only a BB gun. However, D.W. later admitted to Coombs that he had told S.D. and the other involved individual that it was a 9 mm handgun. Coombs testified that when asked to locate the gun, S.D. and D.W. both stated it was "gone." Neither S.D. nor D.W. testified.

{¶6} At the close of trial, the magistrate adjudicated D.W. and S.D. delinquent for having engaged in conduct which, if it had been engaged in by an adult, would have constituted the offense of aggravated robbery with a firearm specification. Without objection from D.W., the juvenile court adopted the magistrate's decision.

{¶7} D.W. filed this timely appeal and raises the following assignments of error:

---

[1] Although never expressly stated, it is apparent from the trial transcript that the magistrate and the parties were operating under the presumption that orange tips are characteristic of BB guns.

3

1. D.W.'s due process and Confrontation Clause rights were plainly violated when the State introduced inculpatory statements of an alleged co-defendant through the surrogate testimony of an investigating detective.

2. The Hamilton County Juvenile Court committed plain error when it adopted the Magistrate's Decision because the Magistrate's operability and deadly weapon findings were against the sufficiency and manifest weight of the evidence.

3. D.W. was deprived of the effective assistance of counsel.

### Law and Analysis

#### I.    Confrontation Clause

{¶8}    In his first assignment of error, D.W. argues that the juvenile court erred in considering Detective Coombs's testimony regarding S.D.'s out-of-court confession statements.  The statements include, "[S.D.] said that [D.W.] was armed with a gun."; "[S.D.] believed it was possibly real by [D.W.'s] mannerisms, the way he carried it—"; "[D.W.] said it was a nine-millimeter. * * * The statement was made [to S.D.] earlier in the day."; and all relevant discussions therein.

{¶9}    Because D.W. failed to file objections to the magistrate's decision, he waived all but plain error.  Juv.R. 40(D)(3)(b).  To prevail on a claim of plain error, the appellant must show that an error occurred, that the error was plain, and that the error affected the outcome of the trial—i.e., there exists a reasonable probability that, but for the error, the result of the proceeding would have been different.  Crim.R. 52(B); *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22.

{¶10} *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), governs the admissibility of inculpatory statements made by a nontestifying codefendant. In *Bruton*, the United States Supreme Court held that, in the context of a joint trial, the admission of a nontestifying codefendant's confession that implicates the defendant violates the defendant's rights under the Confrontation Clause. The *Bruton* decision recognized that a nontestifying codefendant's confession is "inevitably suspect" and "[t]he unreliability of such evidence is intolerably compounded when the alleged accomplice * * * does not testify and cannot be tested by cross-examination." *Id.* at 135-136. Based on these concerns, the Court found that when such powerfully incriminating statements are spread before the jury in a joint trial, jurors could not be presumed to ignore the statements when considering the guilt or innocence of the fellow defendant. *Id.*

{¶11} However, the same concerns are not present in the case of a bench trial. In a bench trial, the trial court is presumed to apply the law correctly and to act properly in considering the evidence. *In re Watson*, 47 Ohio St.3d 86, 91, 548 N.E.2d 210 (1989). Therefore, this court has held *Bruton* to be inapplicable to bench trials. *In re Jones*, 1st Dist. Hamilton Nos. C-090497, C-090498 and C-090499, 2010-Ohio-3994, ¶ 24. Instead, there exists a "rebuttable presumption that the trial court [is] capable of disregarding inadmissible extrajudicial statements implicating [the defendant]." *Id.* at ¶ 25.

{¶12} A review of the record in this case demonstrates that the magistrate improperly considered S.D.'s confession statements to Coombs as substantive evidence against D.W. Three of the magistrate's factual findings relied upon S.D.'s statements. In rendering her decision, the magistrate found the following: "[S.D.] also stated that while he had a BB gun, [D.W.] had a real gun during the commission

of the offense."; "While [S.D.] admitted that his co-defendant [D.W.] was holding a firearm, he wants the Court to believe that he was holding a BB gun during the offense."; and "The evidence also established that [S.D.] stated that he saw [D.W.] with a firearm during the commission of offense." Because these findings of fact were approved and adopted by the juvenile court, the juvenile court used S.D.'s confession statements against D.W. in violation of the Confrontation Clause.

{¶13} However, based on a review of the record, the juvenile court's error does not rise to the level of plain error. At trial, Brady testified that three individuals surrounded him, two holding what he believed to be firearms. Brady described one as a black pistol and one as a gray gun with holes in the barrel. Brady denied seeing orange tips on either of the guns. Brady testified that one of the individuals instructed him not to move while the guns were visibly brandished at the individuals' sides.

{¶14} Although Brady could not identify D.W. as one of the individuals involved in the offense, D.W. admitted to Coombs his involvement in the robbery and his possession of a gun, albeit a BB gun. At trial, Coombs testified that he and D.W. "talked about the gun, whether it was a BB gun or not and why somebody would think that it might be a real gun." According to Coombs, D.W. admitted that "he told [the other individuals involved in the robbery] that it was a nine, nine-millimeter handgun. * * * And he told people that that's what it was that day, same day as the robbery." Coombs stated that a "nine," when used in that manner, does not refer to a BB gun.

{¶15} D.W.'s confession, when combined with Brady's testimony, forms reliable evidence of delinquency. Therefore, while this is certainly a close case, we

cannot conclude that the juvenile court's error amounts to plain error. D.W.'s first assignment of error is overruled.

## II. Weight and Sufficiency of the Evidence

{¶16} In his second assignment of error, D.W. challenges the sufficiency and weight of the juvenile court's operability finding. Specifically, D.W. contends that the state presented insufficient evidence that he used an operable firearm to facilitate the robbery, and not a BB gun.

{¶17} To determine whether a conviction is supported by sufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 274, 574 N.E.2d 492 (1991). In reviewing a challenge to the weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *Id.*

{¶18} D.W. was adjudicated delinquent for committing an act which, if it had been committed by an adult, would have constituted the offense of aggravated robbery with a firearm specification. To establish both the deadly-weapon element of aggravated robbery and the firearm specification, the state must prove beyond a reasonable doubt that the offender possessed an operable firearm. *State v. Brown*, 1st Dist. Hamilton No. C-180180, 2019-Ohio-3349, ¶ 12. When determining whether a firearm is operable, "the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm." R.C. 2923.11(B)(2).

{¶19} Where, as here, the alleged firearm is never recovered, proof of its existence and operability may be based on lay testimony. *State v. Murphy*, 49 Ohio St.3d 206, 208, 551 N.E.2d 932 (1990). A witness's belief that the accused possessed a gun, coupled with evidence of the accused's intent to create and use that belief for his own criminal purpose, is sufficient to prove a firearm specification. *State v. Raheem*, 1st Dist. Hamilton No. C-970928, 1998 WL 636984, *6 (Sept. 18, 1998). Thus, an explicit threat related to a firearm can support a finding of operability. *See, e.g., State v. Obsaint*, 1st Dist. Hamilton No. C-060629, 2007-Ohio-2661 (defendant presented a note to the bank teller indicating that he would shoot her if she did not comply with his demands); *State v. Jeffers*, 143 Ohio App.3d 91, 757 N.E.2d 417 (1st Dist.2001) (defendant verbally threatened to "blow [victim's] head off" if she refused to give him the money).

{¶20} An implicit threat to discharge a brandished gun can also satisfy the state's burden of proving that the firearm was operable. *Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541. In *Thompkins*, the Ohio Supreme Court found the following facts sufficient to show the operability of a firearm: the defendant had a black gun in his hand, the victim was frightened, the defendant told the victim that it was a "holdup," the defendant repeatedly told the victim to go faster, and the defendant told the victim not to call the police for ten minutes. *Id.* at 383. These circumstances should be distinguished from the mere possession of a firearm which, "without something more, is not enough to allow for a finding that it is operable." *In re: S.D.*, 1st Dist. Hamilton No. C-180651, 2020-Ohio-941, ¶ 11.

{¶21} Throughout the course of litigation, D.W. has maintained that he possessed only a BB gun during the robbery. A BB gun is not as a matter of law a firearm. *State v. Brown*, 101 Ohio App.3d 784, 788-789, 656 N.E.2d 741 (1st

Dist.1995) (holding that the state presented insufficient evidence of the deadly-weapon element of assault where there was no evidence on the particular BB gun's capability of inflicting death). However, the state presented sufficient evidence to establish that D.W. possessed an operable firearm, not a BB gun.

{¶22} This court decided the sufficiency of the evidence as to the operability of the firearms in S.D.'s appeal. *See In re: S.D.* Although this court relied, in part, on the then-unchallenged statements of S.D., the remaining evidence still supports the juvenile court's operability finding.

{¶23} Brady testified that he saw two firearms during the offense—one possessed by S.D. and one possessed by another individual. Although Brady could not identify D.W. as one of the people involved in the offense, D.W. admitted to participating in the robbery and to bringing a gun to the robbery. While D.W. claimed he possessed only a BB gun, his actions certainly convinced Brady otherwise. The record demonstrates that D.W. openly displayed a black pistol at his side—i.e., "a position one would hold an operable firearm." *Id.* at ¶ 12. At the same time, one of the individuals ordered Brady not to move. Under these circumstances, the evidence supports a finding that D.W. openly brandished a firearm while Brady was implicitly threatened. Thus, viewed in the light most favorable to the state, this evidence establishes that D.W. possessed an operable firearm.

{¶24} Likewise, we cannot conclude that the juvenile court's operability finding was against the manifest weight of the evidence. "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. "Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of

particular witnesses, we must afford substantial deference to its determination of credibility." (Internal quotations omitted.) *State v. Glover*, 1st Dist. Hamilton No. C-180572, 2019-Ohio-5211, ¶ 30. Here, the magistrate heavily relied on the testimony of Brady. The magistrate found Brady to be "a very credible witness" and she "absolutely believe[d] him." Brady's testimony, when combined with D.W.'s own confession, forms reliable evidence of delinquency. Therefore, in light of the entire record and the credibility of the witnesses, this is not a case where the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgments must be reversed.

{¶25} D.W.'s second assignment of error is overruled.

### III.     Ineffective Assistance of Counsel

{¶26} In his third assignment of error, D.W. argues that he was deprived of the effective assistance of counsel where his trial counsel assented to a violation of the Confrontation Clause and failed to object to the magistrate's decision.

{¶27} To prove ineffective assistance of counsel, the defendant must show (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694.

{¶28} The prejudice standard for reviewing plain-error claims is "the same deferential standard for reviewing ineffective assistance of counsel claims." *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22. Therefore, having already determined that the juvenile court's violation of D.W.'s Confrontation

10

Clause rights did not amount to prejudicial error, we necessarily find that counsel's performance with regard to such violation also does not amount to prejudicial error.

{¶29} Having already determined that D.W.'s adjudication was supported by the sufficiency and manifest weight of the evidence, we also conclude that D.W. was not denied his right to effective assistance of counsel where counsel failed to object to the magistrate's decision. *See In re Meatchem*, 1st Dist. Hamilton No. C-050291, 2006-Ohio-4128, ¶ 32 ("Because we have addressed both the manifest weight of the evidence and the sufficiency of the evidence in this appeal, trial counsel's failure to raise it in the form of an objection to the magistrate's decision cannot be said to have been prejudicial."); *see also In re Darvius C.*, 6th Dist. Erie No. E-00-064, 2002 WL 328377 (Mar. 1, 2002) (holding that even if counsel was deficient in failing to file objections to the magistrate's decision, the juvenile was not prejudiced where the adjudication was supported by the sufficiency and weight of the evidence).

{¶30} D.W.'s third assignment of error is overruled.

### *Conclusion*

{¶31} For the foregoing reasons, D.W.'s three assignments of error are overruled and the judgments of the juvenile court are affirmed.

Judgments affirmed.

**ZAYAS, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.