[Cite as *State v. Roberts*, 2021-Ohio-3073.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2020-12-089 |
| | : | O P I N I O N |
| - vs - | | 9/7/2021 |
| | : | |
| MICHAEL W. ROBERTS, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 20CR36619

David P. Fornshell, Warren County Prosecuting Attorney, and Kathryn M. Horvath, Assistant Prosecuting Attorney, for appellee.

Ostrowski Law Firm Co., L.P.A., and Andrea G. Ostrowski, for appellant.


**PIPER, P.J.**

{¶ 1} Appellant, Michael Roberts, appeals his convictions in the Warren County Court of Common Pleas for aggravated robbery, felonious assault, and the accompanying firearm specifications.

{¶ 2} Roberts' mother, Donna Black, had been in a relationship with the victim of the crimes for which Roberts was convicted. However, the two had ended their relationship

and the victim had procured a protection order against Black. On an evening in March 2020, Roberts' girlfriend, Laura Gillespie, exchanged text messages with the victim indicating that Roberts was in jail and that she needed $2,000 to post bond for Roberts. The victim responded to the text messages and invited Gillespie to his home. Despite Gillespie's representation that Roberts was incarcerated and despite the protective order against Black, Roberts and Black accompanied Gillespie to the victim's home.

{¶ 3} The victim was working on his garbage disposal when he noticed Roberts standing over him. When the victim removed his head from underneath the sink area, Roberts hit him between the eyes with the butt of a revolver, which the victim observed as having been spray painted a reddish color. Roberts continued to hit the victim in the head with the firearm and demanded money. The victim then heard Gillespie instruct Roberts to shoot the victim once they had obtained his money.

{¶ 4} The victim and Roberts struggled with each other, and during the struggle, Roberts told Gillespie to use the revolver. At that time, Gillespie pointed the revolver at the victim's head and neck, and the victim released Roberts. Roberts then took the revolver from Gillespie and used it to strike the victim multiple times. Eventually, all four people went upstairs.

{¶ 5} Roberts, Gillespie, and Black forced the victim to go across the hallway into a spare bedroom that the victim used as a recording studio. Roberts instructed the victim to sit down and then struck him multiples times with the revolver. Gillespie then took the firearm, emptied bullets into her purse, and placed the gun in her purse. Roberts, Gillespie, and Black then left the victim's home.

{¶ 6} The victim began to clean himself and tend to his wounds, but did not call police. Instead, he allowed Black back into his home later that evening when she came back to his house alone. However, when Black left the home later that night to smoke

outside, the victim locked the door and called police.

{¶ 7} A sergeant with the Hamilton Township Police Department responded to the victim's home and observed Black sitting on the victim's steps. Based upon his interaction with Black, the sergeant believed that she was under the influence of methamphetamine. The sergeant then made contact with the victim and immediately recognized that the victim had been badly injured. The victim told the sergeant that he had been assaulted by Roberts and Gillespie.

{¶ 8} Roberts and Gillespie were indicted on multiple charges related to the incident, including aggravated robbery, felonious assault, and the accompanying firearm specifications. After the indictment was issued, Gillespie made a report to the Highland Heights, Kentucky Police Department that her firearm had been stolen. She reported that the firearm was a pinkish red color, and called it a "Pink Lady." The police later determined that Gillespie had made a false report.

{¶ 9} Roberts and Gillespie pled not guilty to the charges, and the matter proceeded to a jury trial. During trial, Black, who had since pled guilty to aggravated robbery for the same incident, testified and essentially corroborated the facts as discussed above, with some inconsistencies. Roberts argued at trial that he had not caused the victim's injuries, and instead, cast blame for the victim's assault on Black. The jury found Roberts and Gillespie guilty on all counts and specifications. The trial court sentenced Roberts to an aggregate prison sentence of ten years. Roberts now appeals his convictions, raising the following assignment of error:[1]

{¶ 10} THE EVIDENCE WAS INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTIONS, AND THE VERDICTS WERE CONTRARY TO THE MANIFEST WEIGHT

---

1. Gillespie filed an appeal, and that matter is currently pending before this court.

OF THE EVIDENCE.

{¶ 11} Roberts argues in his assignment of error that his convictions were against the manifest weight of the evidence and were unsupported by sufficient evidence.

{¶ 12} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Billingsley*, 12th Dist. Butler Nos. CA2019-05-075 and CA2019-05-076, 2020-Ohio-2673, ¶ 14. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 13} A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66.

{¶ 14} "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-

5226, ¶ 81, quoting *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*, citing *Thompkins*, 78 Ohio St.3d at 387. Furthermore, although the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 15} Roberts was convicted of aggravated robbery in violation of R.C. 2911.01(A)(1), which prohibits a person in attempting to or committing a theft offense to "have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."

{¶ 16} Roberts was also convicted of felonious assault in violation of R.C. 2903.11(A)(1), which provides that no person shall knowingly "cause serious physical harm to another or to another's unborn."

{¶ 17} Roberts argues that the state presented no physical evidence that he was ever in the victim's house on the night of the incident and that the state's testifying witnesses lacked credibility. However, after reviewing the record, we find that the state presented evidence that demonstrates Roberts' convictions were not against the manifest weight of the evidence and were supported by sufficient evidence.

{¶ 18} The victim testified that Roberts came into his home and hit him multiple times with the butt of a revolver that had been spray painted a reddish color. The victim testified that Roberts pointed the revolver at him multiple times, especially at times when he tried to

"fight back." The victim also testified that Roberts forced him to go upstairs where he continued to beat him with the revolver. Again, Roberts demanded money, and the victim told Roberts that he had cash in a money clip in his pants, which were located in the floor of his closet. Roberts then located the money clip and counted the cash, which totaled $18.00. At that time, Roberts stated, "I can't believe I'm going to prison for this."

{¶ 19} After Roberts placed the cash inside his pocket, he forced the victim to go into the recording studio the victim had set up in a spare bedroom. At that point, Roberts, Gillespie, and Black feared they had made too much noise and decided to leave.

{¶ 20} As a result of Roberts' assaults upon him, the victim suffered a fractured orbital floor, a displaced fracture of the nose, closed fracture of the left maxilla, as well as a closed head injury.[2] The victim testified that the left side of his face went numb as a result of the assault and that it had never recovered. He also exhibited ringing in his ears that will continue indefinitely. The victim further testified that he has vison problems and had to replace three teeth as a result of the assault.

{¶ 21} As noted earlier, Black also testified at trial. She confirmed that Roberts was at the victim's home and that Roberts attacked the victim. During her testimony, there were a few inconsistencies in her testimony as compared to the victim's. While Roberts asserts that these inconsistences show a lack of credibility among the witnesses, the record clearly demonstrates that both witnesses testified to Roberts being at the victim's home and that Roberts beat the victim.

{¶ 22} This court has long held that the jury is in the best position to judge the credibility of witnesses and that "a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony." *State v. Bates*, 12th

---

2. In human beings, the maxilla forms part of the nose and eye socket.

Dist. Butler No. CA2009-06-174, 2010-Ohio-1723, ¶ 11. This is because, "[a]s the trier of fact in this case, the jury was in the best position to judge the credibility of witnesses and the weight to be given the evidence." *State v. Johnson*, 12th Dist. Warren Nos. CA2019-07-076 and CA2019-08-080, 2020-Ohio-3501, ¶ 24, citing *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 42.

{¶ 23} The jury was free to believe or disbelieve all, part, or none of the victim's and Black's testimony. *State v. Helton*, 12th Dist. Warren No. CA2018-12-141, 2019-Ohio-4399, ¶ 22. *See also State v. Mitchell*, 8th Dist. Cuyahoga No. 102499, 2015-Ohio-4379, ¶ 18 (when examining witness credibility, the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact).

{¶ 24} By its verdict, the jury clearly choose to credit some, if not all, of the victim's testimony while at the same time finding unpersuasive Robert's defense strategy that Black had caused the injuries to the victim. The jury was informed of the protection order against Black, and that she had threatened the victim in the past. However, the jury also heard the victim and Black directly testify that Roberts was the perpetrator, and by virtue of its verdict, found this testimony more credible than the proposition that Black had caused the injuries. This decision was well within the jury's purview as the trier of fact and ultimate fact finder. *See State v. Graffius*, 7th Dist. Columbiana No. 18 CO 0008, 2019-Ohio-4961, ¶ 11 ("the jury was free to believe either version of the facts and, based on appellant's conviction, apparently believed the victim").

{¶ 25} Roberts also argues that there was insufficient evidence to support the imposition of the firearm specifications because the state did not prove that the firearm was operable at the time of the offense. We disagree.

{¶ 26} According to R.C. 2941.145, the offender is subject to a mandatory three-year

prison term if the offender "had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." According to R.C. 2923.11(B)(1), a firearm is "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant," including "an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." Proof that the firearm used during the commission of the offenses was operable is thus an essential element of firearm specifications. *State v. Griffith*, 12th Dist. Warren No. CA97-02-018, 1997 Ohio App. LEXIS 3657, *5.

{¶ 27} In determining whether a firearm was operable, the trier of fact, in this case the jury, "may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm." *State v. Rigdon*, 12th Dist. Warren No. CA2006-05-064, 2007-Ohio-2843, ¶ 22. This proposition is confirmed by R.C. 2923.11(B)(2), which states that "the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm" in determining whether a firearm is operable.

{¶ 28} The state need not produce the firearm or offer direct, empirical evidence that the firearm was operable. *State v. Minter*, 12th Dist. Butler No. CA2009-06-150, 2010-Ohio-594, ¶ 15. Rather, as this court has stated previously, a firearm specification can be proven beyond a reasonable doubt by circumstantial evidence. *State v. Wilson*, 12th Dist. Clermont No. CA2001-09-072, 2002-Ohio-4709, ¶ 38. Proof of the operability of the firearm can also be established by the circumstances surrounding the crime. *State v. Chapman*, 12th Dist. Butler No. CA2018-03-046, 2018-Ohio-4560, ¶ 21-23.

{¶ 29} The state presented ample evidence that the firearm used during the robbery was operable. The record is clear that Roberts and Gillespie acted at all times as if the

revolver was operable, and that it could expel projectiles. Specifically, the jury heard testimony that Gillespie stated, "when you get the money just shoot him." Moreover, when the scuffle was occurring and the victim had Roberts in a headlock, Roberts told Gillespie, "Laura, the gun," at which time Gillespie pointed the firearm at the victim's head to make him release Roberts from the headlock. *See State v. Patterson*, 10th Dist. Franklin No. 15AP-1117, 2016-Ohio-7130, ¶ 55 (determining the operability of the firearm through circumstantial evidence where the assailant threatened the victim with the firearm by pointing it toward the victim's forehead, chin, chest, nose, and mouth).

{¶ 30} Once Roberts forced the victim upstairs, Gillespie showed the victim the bullets and told him that the bullets were "hollow points" and that they would "F [him] up." She then emptied the firearm of its bullets and placed the bullets and the firearm into her purse, thus demonstrating that at the time of the assault, the firearm was loaded and operable.

{¶ 31} Also, as noted earlier, the victim testified that he noticed that the firearm was spray painted a reddish color and that Gillespie reported her "Pink Lady" firearm stolen after she was indicted. Gillespie told police that she had purchased the revolver for protection. This statement to officers further allowed the jury to reasonably conclude that the firearm used to assault the victim was operable.

{¶ 32} Roberts relies on *State v. Chapman*, 12th Dist. Butler No. CA2018-03-046, 2018-Ohio-4560, ¶ 28, in which this court determined that the state failed to present evidence that the firearm used during the commission of an offense was operable. Instead, we noted that the assailant had only used the firearm to bludgeon the victim, rather than shooting or threatening to shoot the victim with it. The simple fact that the assailant bludgeoned the victim was not enough to prove the firearm's operability, as the specification language requires more than "mere possession of a firearm alone." *Id.* at ¶ 28.

{¶ 33} However, and unlike *Chapman*, the state presented testimony that Roberts and Gillespie threatened to shoot the victim with the firearm multiple times and also used it to ensure the victim's compliance. Thus, the firearm specification was not based upon Roberts' mere possession of the firearm, but rather, the express threats to shoot the victim during the facilitated offenses and multiple references to the firearm being operable.

{¶ 34} After reviewing the record, we find that Robert's convictions and the firearm specifications were supported by sufficient evidence and were not against the manifest weight of the evidence. As such, Roberts' single assignment of error lacks merit and is overruled.

{¶ 35} Judgment affirmed.

S. POWELL and M. POWELL, JJ., concur.