[Cite as *State v. Staten*, 2018-Ohio-4681.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                           :

        Plaintiff-Appellee,               :                   No. 18AP-48
                                                                                    (C.P.C. No. 17CR-3881)
v.                                                              :

                                                                                    (REGULAR CALENDAR)
Darren K. Staten,                               :

        Defendant-Appellant.          :

---

D E C I S I O N

Rendered on November 20, 2018

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Michael P. Walton*, for appellee. **Argued:** *Michael P. Walton.*

**On brief:** *Todd W. Barstow*, for appellant. **Argued:** *Todd W. Barstow.*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Darren K. Staten, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of one count of burglary, with a firearm specification, and two counts of theft. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} In July 2017, plaintiff-appellee, State of Ohio, indicted Staten on one count of burglary in violation of R.C. 2911.12, a second-degree felony; one count of theft in violation of R.C. 2913.02, a third-degree felony; and one count of theft in violation of R.C. 2913.02, a fifth-degree felony. The burglary count and one of the theft counts contained a one-year firearm specification under R.C. 2941.141(A). Staten pleaded not guilty and waived his right

to be tried by jury.  The matter was tried before the court in December 2017.  As pertinent to this appeal, the following evidence was adduced at trial.

{¶ 3}  Johnna Qualls, a resident at East Worthington Village Apartments, testified as follows.  Sometime in the first half of 2017, Staten began to reside with Qualls after their relationship became romantic.  In June 2017, management told Qualls that she was in violation of her lease for letting Staten stay with her, and she had become frustrated with Staten and their relationship.  Consequently, Qualls advised Staten that he could no longer stay at her apartment; however, Staten had difficulty finding a new place to live.  During the morning of June 18, 2017, and after Staten had been gone from Qualls' apartment for a few days, he called her to tell her he needed to get his stuff at her apartment, and that his son would be with him.  He arrived outside Qualls' apartment, and Qualls unlocked the gate to the fence surrounding her patio.  Because Qualls noticed Staten was alone, she attempted to lock the gate, but Staten pushed her and made his way inside the patio area.  Qualls told Staten to leave, but he "had [her] by the arm."  (Dec. 5, 2017 Tr. at 92.)  Qualls saw Greg Gilham, another resident at the apartment complex, and she hollered at him for help.  Once Staten saw Gilham, he released Qualls and ran into the apartment.  Gilham told Qualls to go to his apartment and tell his wife to call the police.  After she left and then returned to her apartment, she realized her purse, which contained her firearm, credit cards, and cash, was gone.  Qualls had a license to carry a concealed handgun.

{¶ 4}  Gilham testified as follows.  During the morning of June 18, 2017, Gilham returned home from working the night shift, and his wife had left him a note to go buy some cigarettes.  Gilham walked to the store and, as he was making his way back to his apartment, Qualls yelled at him for help.  He could see that Staten had "ahold of her by her upper arm."  (Dec. 5, 2017 Tr. at 46.)  Qualls "was pulling away from him," when Staten released her.  (Tr. at 47.)  Staten ran into Qualls' apartment, and Qualls ran toward Gilham.  Gilham told Qualls to go to his apartment and have his wife call 911.  Gilham followed Staten into the apartment, and he could hear Staten upstairs "rooting around."  (Tr. at 47.)  Remembering that Qualls kept a firearm in her apartment, Gilham exited and went to his apartment to retrieve a knife.  When he returned to Qualls' apartment, Staten was gone.

{¶ 5}    Based on the evidence at trial, the court found Staten guilty on the one count of burglary, with the attendant firearm specification, and the two counts of theft.[1]  For the purpose of sentencing, the trial court merged the theft counts into the burglary count.  The court sentenced Staten to three years in prison on the burglary count, plus one consecutive year in prison for the firearm specification attached to that count.

{¶ 6}    Staten timely appeals.

## II.  Assignment of Error

{¶ 7}    Staten assigns the following error for our review:

> The trial court erred and deprived appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article One Section Ten of the Ohio Constitution by finding him guilty of burglary and theft as those verdicts were not supported by sufficient evidence and were also against the manifest weight of the evidence.

## III.  Discussion

{¶ 8}    In Staten's sole assignment of error, he alleges his convictions for burglary and theft were not supported by sufficient evidence and were against the manifest weight of the evidence.

### 1.  Sufficiency of the Evidence

{¶ 9}    Whether there is legally sufficient evidence to sustain a verdict is a question of law.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  Sufficiency is a test of adequacy.  *Id.*  The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.  *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.  "[I]n a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime."  *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4.

---

[1] The trial court's judgment entry does not address the charged firearm specification attached to the first of the two theft counts.

{¶ 10} Here, Staten was convicted of one count of burglary, with a firearm specification, and two counts of theft. As to the burglary conviction, R.C. 2911.12(A)(2) prohibits anyone from, "by force, stealth, or deception, * * * [t]respass[ing] in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person * * * is present or likely to be present, with purpose to commit in the habitation any criminal offense." The statute prohibiting theft, R.C. 2913.02(A), provides in part that no person, with purpose to deprive the owner of property shall knowingly obtain or exert control over the property by deception or without the consent of the owner.

{¶ 11} Regarding the firearm specification attached to the burglary conviction, the state was required to prove that Staten, while committing the underlying offense, had a firearm on or about his person or under his control. R.C. 2941.141(A). "Firearm" means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, and it includes an unloaded firearm and any firearm that is inoperable but that can readily be rendered operable. R.C. 2923.11(B)(1). Thus, in support of a firearm specification, the state " 'must prove beyond a reasonable doubt that the firearm was operable or could readily have been rendered operable at the time of the offense.' " *State v. Murphy*, 49 Ohio St.3d 206, 208 (1990), quoting *State v. Gaines*, 46 Ohio St.3d 65 (1989), syllabus. To meet this requirement, the state need not produce the actual firearm. *Murphy* at 209. Rather, "[w]hen determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm." R.C. 2923.11(B)(2).

{¶ 12} Viewed in a light most favorable to the prosecution, sufficient evidence at trial supported Staten's convictions for burglary and theft. The testimony at trial demonstrated that Staten indicated he was going to arrive at Qualls' apartment with his son to pick up his belongings. Because Staten arrived by himself, however, Qualls directed Staten to leave. Instead of leaving, Staten pushed Qualls aside and entered her home. Qualls ran to call the police. When she returned to her apartment, her purse, and the firearm, credit cards, and

cash that had been in that purse, were gone.  Thus, the circumstantial evidence showed that Staten stole those items after forcing his way into her apartment.

{¶ 13} As to the firearm specification, Staten argues there was insufficient evidence concerning the operability of the firearm to meet the requirements under R.C. 2941.141(A). We disagree.  The evidence that Qualls kept the firearm in her purse, coupled with the evidence she had a concealed handgun license, reasonably demonstrated that the firearm was operable or readily could be rendered operable.  The purpose of carrying a firearm legally with a concealed handgun license is to have it readily available as a means for defense, but a firearm that is not operable or cannot be readily rendered operable fails to serve that purpose.  Thus, sufficient evidence supported the firearm specification under R.C. 2941.141(A).

{¶ 14} For these reasons, we reject Staten's assertion that insufficient evidence supported his convictions.

### 2.  Manifest Weight of the Evidence

{¶ 15} Determinations of credibility and weight of the testimony are primarily for the trier of fact.  *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The jury, or the court in a bench trial, may take note of inconsistencies at trial and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony."  *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).  Consequently, "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a ' "thirteenth juror" ' and disagrees with the factfinder's resolution of the conflicting testimony."  *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982); *see State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, ¶ 20 ("a prerequisite for any reversal on manifest-weight grounds is conflicting evidence").  However, an appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387.

Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 16} Here, Staten argues his convictions were against the manifest weight of the evidence because the testimony of Qualls was not credible. He asserts Qualls' testimony was not credible because she was embarrassed that she had been romantically involved with him, and because she had been frustrated as to his inability to find a new residence. Staten suggests Qualls was biased against him because of these circumstances. However, the court, as the finder of fact in this case, could believe all, part, or none of Qualls' testimony. *Raver*, supra. Thus, it was within the province of the court as factfinder to assess Qualls' history with Staten and determine its significance in relation to her testimony implicating Staten in unlawful conduct. Moreover, while Staten challenges the credibility of Qualls, he cites no evidence that conflicts with her account of the events at issue. In fact, the only other person to testify regarding the incident, Gilham, provided testimony entirely consistent with Qualls' testimony. Thus, Staten's argument that his convictions were against the manifest weight of the evidence is unpersuasive.

{¶ 17} Because Staten fails to demonstrate that his convictions were not supported by sufficient evidence or were against the manifest weight of the evidence, we overrule his sole assignment of error.

## IV. Disposition

{¶ 18} Having overruled Staten's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER, J., concurs.
TYACK, J., concurs in judgment only.