[Cite as *In re A.Y.*, 2022-Ohio-739.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: A.Y. | : | APPEAL NOS. C-210182 |
| | | C-210183 |
| | | C-210184 |
| | : | TRIAL NOS. 20-1216 |
| | | 20-1217 |
| | : | 20-3364 |
| | : | *O P I N I O N.* |

Appeals From:   Hamilton County  Juvenile Court

Judgments Appealed From Are:  Affirmed

Date of Judgment Entry on Appeal: March 11, 2022

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Alex Scott Havlin*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, *Joshua A. Thompson*, Assistant Public Defender, and *Jessica Moss*, Assistant Public Defender, for Defendant-Appellant.

**MYERS, Presiding Judge.**

{¶1}    Appellant A.Y. appeals the trial court's judgments adjudicating him delinquent of aggravated robbery with accompanying firearm specifications, having a weapon while under a disability, and robbery.  In three assignments of error, A.Y. argues that the trial court erred by considering testimony from a state's witness that he had exercised his right to remain silent during police questioning and used that silence against him, that the state failed to present sufficient evidence that he possessed an operable firearm, and that his adjudications were against the manifest weight of the evidence.  We find A.Y.'s arguments to be without merit and affirm the trial court's judgments.

### *Factual and Procedural Background*

{¶2}    On February 24, 2020, a masked person entered Sam's Corner Grocery and held owner Mohammad Karazon at gunpoint while demanding money.  Karazon told responding officers that A.Y. was the masked gunman, and he identified A.Y. in a photographic lineup.

{¶3}    A.Y. was charged with several offenses related to this event.  In the case numbered 20-1216, the state filed a complaint alleging that A.Y. was a delinquent child for committing an act that, if committed by an adult, would have constituted the offense of aggravated robbery in violation of R.C. 2911.01.  The complaint also contained two accompanying firearm specifications.  In the case numbered 20-1217, the state filed a complaint alleging that A.Y. was a delinquent child for committing an act that, if committed by an adult, would have constituted the offense of having a weapon while under a disability in violation of R.C. 2923.13.

And last, in the case numbered 20-3364, the state filed a complaint alleging that A.Y. was a delinquent child for committing an act that, if committed by an adult, would have constituted the offense of robbery in violation of R.C. 2911.02. This complaint also contained an accompanying firearm specification.

{¶4} At a trial before a juvenile court magistrate, Karazon testified that A.Y. entered the store, held the door open, pointed a gun at Karazon, and told Karazon to give him the money out of the cash register. As Karazon started to walk behind the counter, he retrieved his own weapon and fired at A.Y. The bullet struck a container of cheese dip, and the dip splattered on A.Y. and the surrounding areas of the store. A.Y. immediately fled from the store. The robbery was captured on the store's surveillance cameras, and a video of the robbery was played during Karazon's testimony.

{¶5} Karazon called 911, and when the police responded he identified A.Y. as the person who had robbed the store. He recognized A.Y. because A.Y. and his brother had frequented the store for many years. Although A.Y. wore a mask during the robbery, Karazon testified that A.Y.'s eyes were not covered and were very notable. In addition to the mask, Karazon testified that A.Y. wore a vest and a gray shirt during the robbery. Karazon also identified A.Y. in a photographic lineup.

{¶6} Karazon initially testified that A.Y. carried a gray handgun, but conceded on cross-examination that he told the 911 operator that the gun was black. Based on the gun's appearance, Karazon "believed, a hundred percent" that A.Y. possessed a real gun.

{¶7} Detective Charles Zopfi testified that he responded immediately to the store after receiving a broadcast about the robbery. Upon entering, he noticed a

yellow and orange substance on the floor, cooler cases, and counter. Detective Zopfi spoke with Karazon who told the detective that he could identify his assailant. Based on the information provided by Karazon, Detective Zopfi requested that a photographic lineup be prepared. He also obtained a search warrant for A.Y.'s home.

{¶8} Detective Zopfi found a brown nylon vest lying on the front porch of A.Y.'s home that matched the vest worn by the suspect during the robbery. And in a bedroom, he recovered two light blue button-up long-sleeved shirts, a pair of black jeans, and a pair of tasseled slippers that all matched the type of clothing worn by the suspect during the robbery. One of the shirts had an orange or yellow stain on it in several locations. Detective Zopfi believed that the stains were consistent with the cheese dip that splattered during the robbery.

{¶9} In another bedroom, officers recovered what appeared on first inspection to be a Glock handgun, but was later determined to be a lookalike BB or airsoft gun. Both the label on the gun and its weight were consistent with that of a real Glock handgun. Detective Zopfi testified that the barrel of the gun was also consistent with the size of a nine millimeter .240-caliber round, in contrast to most airsoft or BB guns, which have a much smaller tip. Officers discovered that the gun was a BB or airsoft gun once they took out the magazine and saw that it did not hold a bullet. Officers also found a Powerline Daisy BB gun, which resembled a Beretta style pistol, in a trunk in the living room.

{¶10} No real firearms were found in the home. Detective Zopfi could not conclusively state that the airsoft gun he recovered was the gun used in the robbery, but he testified that it matched the physical characteristics of the gun depicted in the video.

{¶11} During his testimony, the state asked Detective Zopfi what steps he took after executing the search warrant. He stated that "I had attempted to question [A.Y.], but that was to no avail," and "he basically just denied any involvement and then refused to answer any more questions."

{¶12} The magistrate adjudicated A.Y. delinquent of aggravated robbery and the accompanying firearm specifications, and she dismissed the offenses of having a weapon while under a disability and robbery. In her findings of fact and conclusions of law, the magistrate found with respect to the aggravated-robbery offense and the firearm specifications that:

> In this case, Det. Zopfi testified that he did not find a real firearm in Defendant's house when he executed the search warrant. He did, however, find two aerosol or BB guns. Det. Zopfi testified that they both appear[ed] to be very real guns, and it was not until he inspected both guns up close that he realized they were not real. Det. Zopfi testified that Defendant did not make any statements to him about whether or not he was involved in this offense. As such, the Court cannot determine whether one of the BB guns found in Defendant's house was the weapon used during the Robbery of Mr. Karazon's store. The Court is therefore relying on the testimony of Mr. Karazon that he saw Defendant point what he believed to be a real gun at him and that Defendant used this gun to commit/facilitate the offense. The Court finds Mr. Karazon's testimony credible.

{¶13} With respect to the robbery offense, the magistrate found that it was based on the same set of facts as the aggravated-robbery charge, and she dismissed it

5

because A.Y. was adjudicated delinquent for aggravated robbery. The magistrate explained that she was dismissing the weapon-under-disability offense because the state failed to prove that A.Y. possessed a real firearm.

{¶14} A.Y. filed objections challenging his adjudication for aggravated robbery and the firearm specifications. He argued that the state failed to prove both that he possessed an operable firearm and his identity as the perpetrator of the offense. He additionally argued that the magistrate violated his right to remain silent by using his failure to make a statement against him. The trial court overruled A.Y.'s objections. It found that the state presented sufficient evidence to establish that A.Y. was the perpetrator of the offense and that he possessed an operable firearm. With respect to the allegation that the magistrate used his right to remain silent against him, the trial court found that A.Y.'s Fifth Amendment rights were not violated. It stated that "[t]he Magistrate admittedly used a poor word choice, but it did not appear from the Magistrate's Decision that the Magistrate relied on Juvenile's decision not to testify against him. The Magistrate appeared to simply be pointing out she may only rely on the evidence that was before her." The trial court did not consider A.Y.'s silence or use it against him in adjudicating him delinquent.

{¶15} The state also filed objections challenging the magistrate's dismissal of the robbery and having-a-weapon-while-under-a-disability offenses. It argued that it had proved the offense of having a weapon while under a disability beyond a reasonable doubt, and that the magistrate erred in dismissing the robbery offense based on her determination that it was a lesser-included offense of the aggravated-robbery offense. The trial court sustained the state's objections. It held that the state proved the offense of robbery beyond a reasonable doubt, and that the offense should

not have been dismissed prior to adjudication, but rather merged with the aggravated-robbery offense at disposition. It further found that the state proved the elements of having a weapon while under a disability beyond a reasonable doubt.

{¶16} A.Y. was sentenced for the offense of aggravated robbery and the firearm specifications. The offenses of having a weapon under a disability and robbery were merged at sentencing. A.Y. now appeals.

### *Use of A.Y.'s Silence*

{¶17} In his first assignment of error, A.Y. argues that the trial court adjudicated him delinquent in violation of his due-process rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the Ohio Constitution by considering Detective Zopfi's testimony that he exercised his right to remain silent and by using that silence against him when determining whether he used an operable firearm in commission of the offense.

{¶18} A violation of the Due Process Clause occurs when "through *Miranda* warnings, the state promises that an arrestee's silence will not be used against him and then breaches that promise by later using his silence as either substantive evidence of guilt, or as impeachment evidence." *State v. Robinson*, 1st Dist. Hamilton No. C-170147, 2019-Ohio-387, ¶ 3o. Similarly, use of a defendant's prearrest, pre-*Miranda* silence and postarrest, post-*Miranda* silence as substantive evidence of guilt also results in a violation of the Fifth Amendment to the United States Constitution, which provides that no person "shall be compelled in any criminal case to be a witness against himself." *Id.* at ¶ 31.

{¶19} In this case, Detective Zopfi testified that he had attempted to question A.Y. to no avail, and that A.Y. denied involvement and refused to answer any

additional questions. No objections were raised to this testimony. The magistrate twice referenced A.Y.'s refusal to speak to Detective Zopfi in her findings of fact and conclusions of law. When setting forth the facts of the case, the magistrate found that "Det. Zopfi attempted to interview Defendant, however, Defendant refused to make a statement." A.Y.'s silence was again referenced in the magistrate's discussion of the aggravated-robbery offense. The magistrate first generally noted that a defendant may mitigate a victim's testimony that the defendant possessed what the victim believed to be a real firearm by admitting that the weapon used was a BB gun or other type of aerosol gun. The magistrate then applied that law to the facts of the case before her. She referenced Detective Zopfi's testimony that he recovered two very realistic looking aerosol or BB guns in A.Y.'s home, that no real firearms were recovered, and that A.Y. made no statements about his involvement in this case. The magistrate then stated that she could not determine whether one of the BB guns found by Detective Zopfi was the weapon used in the offense, and that she was relying on Karazon's credible testimony that A.Y. pointed what Karazon believed to be a real gun at him.

{¶20} As set forth above, A.Y. filed objections with the trial court, contending that the magistrate violated his right to remain silent by using his failure to make a statement against him. While recognizing that the magistrate could have used a better word choice, the trial court found that the magistrate did not use A.Y.'s decision not to testify against him. We agree with the trial court. The magistrate's language was arguably ill-advised. But the magistrate was not relying on A.Y.'s invocation of his right to remain silent as substantive evidence of guilt that he possessed an operable firearm. Rather, read in context, the magistrate's comments

referenced the fact that although two BB or aerosol guns had been found in A.Y.'s home, there was no evidence that these were the weapons used in the robbery. Rather, there was only testimony that their appearance was similar. On the other hand, testimony from the victim established that he believed the weapon to be a real gun.

{¶21} A.Y. was not adjudicated delinquent in violation of any of his due-process rights. The first assignment of error is overruled.

### *Operability of Firearm*

{¶22} In his second assignment of error, A.Y. argues that the state failed to present sufficient evidence that he possessed an operable firearm. A.Y. argues that his adjudications for aggravated robbery, the accompany specifications, and having a weapon while under a disability must be reversed for this reason.

{¶23} In a challenge to the sufficiency of the evidence, the question is whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶24} A.Y. was adjudicated delinquent of aggravated robbery in violation of R.C. 2911.01, which provides that "[n]o person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it." The term deadly weapon is defined in R.C. 2923.11(A) as "any instrument, device, or thing capable of

inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."

{¶25} A.Y. was additionally found guilty of two firearm specifications for having a firearm on or about his person or under his control while committing the offense and for "display[ing] the firearm, brandish[ing] the firearm, indicat[ing] that [he] possessed the firearm, or us[ing] it to facilitate the offense." R.C. 2941.145(A). The term firearm is defined in R.C. 2923.11(B)(1) as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable."

{¶26} And he was adjudicated delinquent for having a weapon while under a disability in violation of R.C. 2923.13(A)(2), which provides that "no person shall knowingly acquire, have, carry, or use any firearm" if the person "has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence."

{¶27} "[T]o establish both the firearm specification and the deadly-weapon element of aggravated robbery [when the weapon is a gun], the state must prove beyond a reasonable doubt that the offender possessed an operable firearm." *State v. Brown*, 2019-Ohio-3349, 141 N.E.3d 661, ¶ 12 (1st Dist.). Where a firearm is not recovered, this element may be proved by circumstantial evidence. *Id.* Such circumstantial evidence may include the representations and actions of the person with control of the firearm. R.C. 2923.11(B)(2). "A witness's belief that the accused possessed a gun, coupled with evidence of the accused's intent to create and use that

belief for his own criminal purpose, is sufficient to prove a firearm specification." *In re D.W.*, 1st Dist. Hamilton Nos. C-180644 and C-180654, 2020-Ohio-2707, ¶ 19.

{¶28} In this case, Karazon testified that A.Y. entered the store, pointed a gun at him, and told Karazon to give him money. Based on the weapon's appearance, Karazon "believed, a hundred percent, it was a real gun." The weapon used during the robbery was not recovered. Detective Zopfi found a BB gun in A.Y.'s home that resembled the physical characteristics of the weapon used in the commission of the offense, but he could not conclusively say that it was, in fact, the actual gun used.

{¶29} A.Y. argues that possession of the weapon was insufficient to establish that it was operable. But in this case, A.Y. did more than merely possess the weapon. He brandished the weapon, pointing it at Karazon while demanding money. Viewed in the light most favorable to the prosecution as we are required to do in an analysis of the sufficiency of the evidence, A.Y.'s actions, coupled with Karazon's belief that the weapon was real, established sufficient evidence from which the trier of fact could find that the firearm was operable. *See id.*

{¶30} This case is distinguishable from *Brown*, 2019-Ohio-3349, 141 N.E.3d 661, a case in which we recently found that the state failed to establish that the defendant possessed an operable firearm during the commission of a robbery. In *Brown*, the offender entered a video game store with a bag over one of his hands. He extended the bagged arm like he was holding a weapon, instructed everyone in the store to get down on the ground, and demanded money. No witness saw an actual weapon, but Brown threatened to harm them and they believed that he possessed a gun. *Id.* at ¶ 13. But video surveillance evidence clearly indicating that there was no gun in the bag negated this circumstantial evidence. The video evidence showed the

11

offender transferring the bag from one hand to the other. He also opened the bag and demanded that money be put into it. No weapon was ever seen in Brown's hand or in the bag. *Id.* at ¶ 14. We held that there was not sufficient evidence to establish that Brown possessed an operable firearm. *Id.* at ¶ 16.

{**¶31**} Unlike *Brown*, the weapon in this case was brandished and pointed directly at the victim, who believed it was real. There was no question as to the presence of the weapon.

{**¶32**} A.Y. further argues that he did not explicitly threaten to use the weapon. He argues that in the absence of an express threat, the state has failed to prove operability. We reject his argument that words are necessary for a threat to be explicit. A.Y. cites to *State v. Green*, 117 Ohio App.3d 644, 691 N.E.2d 316 (1st Dist.), *State v. Jeffers*, 143 Ohio App.3d 91, 757 N.E.2d 417 (1st Dist.), and *State v. Obsaint*, 1st Dist. Hamilton No. C-060629, 2007-Ohio-2661, in support of his argument. All three of these cases, however, support a finding that there was sufficient evidence of operability. In *Green*, we found sufficient evidence that a defendant possessed a deadly weapon where the defendant, after entering a bank, approached a teller with an envelope wrapped around his hand, told the teller it was a stickup, and threatened to "blow your brains out." *Green* at 651. In *Jeffers*, we held that the defendant's act of threatening to blow the victim's head off after demanding money was sufficient to establish that the defendant possessed an operable firearm. *Jeffers* at 94-95. And in *Obsaint*, we held that a note from the defendant to a bank teller stating that he had a gun and threatening to shoot the teller was sufficient circumstantial evidence to establish that the defendant possessed an operable firearm. *Obsaint* at ¶ 19.

{¶33} Contrary to A.Y.'s assertion, these cases do not support an argument that he did not possess an operable firearm. While A.Y. did not explicitly threaten verbally or in writing to shoot Karazon like the defendants in *Green*, *Jeffers*, and *Obsaint*, he pointed his weapon at Karazon and demanded money. In our view, his actions constituted an explicit threat.

{¶34} Because A.Y.'s actions, coupled with Karazon's belief that the weapon was real, established sufficient evidence from which the trier of fact could find that the firearm was operable, we overrule the second assignment of error.

### Manifest Weight

{¶35} In his third assignment of error, A.Y. argues that his adjudications were against the manifest weight of the evidence.

{¶36} When considering a challenge to the weight of the evidence, the court must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the court clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶37} A.Y. first argues that the weight of the evidence establishes that one of the BB or airsoft guns found in his home was the weapon used during the offense. He points out that the recovered BB or airsoft guns matched the gun used in the robbery and that the guns were found in the same house as clothing matching that worn by the offender. The trial court addressed this argument in its ruling on the parties' objections, stating "[t]he magistrate also did not err by finding the discovery of two BB or airsoft guns in the home of Juvenile did not prove that one of those

guns was what Juvenile used in committing the offense. While Detective Zopfi said either BB or airsoft gun could have been the gun used, there was no evidence that either was the gun used. Particularly, neither gun was found in the room where the clothes were discovered."

{¶38} The trial court's finding is supported by the weight of the evidence. The trial court was in the best position to judge the credibility of the witnesses, and on this record we cannot find that it lost its way in resolving conflicts in the evidence and committed a manifest miscarriage of justice in determining that neither of the BB or airsoft guns found in A.Y.'s home was the weapon used during the robbery.

{¶39} A.Y. also argues that the weight of the evidence did not establish that he was the perpetrator of the aggravated robbery. We are not persuaded. Karazon identified A.Y. as the offender when the police responded to the crime scene. He was familiar with A.Y., who had frequented his store for many years, and he recognized A.Y. even though he was wearing a mask, as A.Y.'s eyes remained visible. Karazon also identified A.Y. in a photographic lineup. Further, clothing matching that worn by the offender was recovered from A.Y.'s home. And the clothing contained a stain consistent with that caused by the cheese dip that splattered during the robbery.

{¶40} A.Y. contends that the clothing found in his home could have been worn by his brother to commit the robbery, rather than by A.Y. But again, the trial court was in the best position to judge the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. It was entitled to believe Karazon's testimony identifying A.Y. as the offender.

14

{¶41} A.Y.'s adjudications were not against the manifest weight of the evidence. The third assignment of error is overruled, and the judgments of the trial court are, accordingly, affirmed.

Judgments affirmed.

**BERGERON** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.