[Cite as *State v. Santana*, 2023-Ohio-3405.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 22CA011895 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| GEORGE SANTANA | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 19CR100264 |

DECISION AND JOURNAL ENTRY

Dated: September 25, 2023

FLAGG LANZINGER, Judge

{¶1} George Santana, defendant-appellant, appeals from the judgment of the Lorain County Court of Common Pleas. This court affirms.

I.

{¶2} On April 12, 2019, the Lorain County Grand Jury indicted Santana for one count of theft in violation of R.C. 2913.02, a felony in the third degree, with a one-year firearm specification pursuant to R.C. 2941.141.

{¶3} On January 25, 2022, Santana waived his right to a trial by jury and the parties proceeded to a bench trial. The State called six witnesses. Santana presented no witnesses.

{¶4} First, the State called M.C. who reported the theft of his Glock 43 firearm from his parked truck. M.C. testified that he pressure-washed his truck the weekend before the theft, though he could not remember if he had washed it on Saturday or Sunday morning. Using his truck to tow his boat, he went fishing Sunday afternoon. On Sunday evening, he parked his truck in his

driveway. On Monday morning, M.C. discovered that his firearm was missing. After calling the police, he travelled to the police station where he reported his firearm stolen. M.C. testified he gave no one access to his truck. M.C. did not know Santana and had not authorized Santana to enter his vehicle or remove his firearm. M.C. testified that he obtained a concealed carry permit in 2016 and that he most recently fired his firearm within "a month or so" of reporting his firearm stolen.

{¶5} Next, the State called Officer Bringman who responded to M.C.'s theft report. Officer Bringman met M.C. at the police station, inspected M.C.'s truck, dusted for fingerprints on the truck's door, and photographed the side of the truck. Rather than lifting the prints himself, Officer Bringman solicited assistance from Agent Soroka, an agent with the BCI. Agent Soroka lifted the latent prints and assisted in taking photographs. Agent Soroka indicated that there were many fingerprints on the door of the truck, and he conducted five lifts. The lifted prints were delivered to BCI for identification.

{¶6} The BCI report identified Santana as the source of the fingerprints. The parties stipulated to the admissibility, authenticity, and the results of the BCI lab report.

{¶7} During the trial, Officer Ludwig testified that he reviewed the BCI lab report. The report indicated that Santana was the source of the prints from the truck. Because Santana was the source of the prints, Officer Ludwig entered Santana's name into the law enforcement agency database. The results of the database search showed that Santana was involved in a traffic stop the morning of the theft report in the same general area as M.C.'s truck.

{¶8} The State called Lieutenant Bockelman who recounted the traffic stop that involved Santana. The same morning the theft was reported, Santana was a passenger in a vehicle travelling in the general area of M.C.'s truck. Lt. Bockelman testified that he initiated a traffic stop after

witnessing a driver operating their car suspiciously. Lt. Bockelman witnessed the car make half U-turns and stop in the middle of the street, consistent with occupants possibly breaking into cars or houses. Once stopped, the car's three occupants provided identification. Lt. Bockelman inquired what they were doing in the area and was told that they were in the neighborhood "visiting a female." The vehicle's occupants couldn't provide specific information regarding the female or her address. Lt. Bockelman asked for consent to search the car, which was granted. During the search, officers found no contraband or firearms. The officers did not search the trunk of the car.

{¶9}     The State also called Officer Descenzo who was present at the traffic stop. Officer Descenzo stood with Santana while the car was searched. Officer Descenzo testified that Santana's clothing appeared baggy, and very warm for the weather. At the completion of the traffic stop, the occupants of the car were not charged with any offenses.

{¶10}   The trial court found Santana guilty of both the theft and the firearm specification. The trial court sentenced Santana to twelve months in prison on the theft count and a consecutive one-year prison term on the firearm specification.

{¶11}   Santana now appeals raising one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

**THE GUILTY VERDICT FOR THEFT WITH A FIREARM SPECIFICATION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶12}   Santana argues that his conviction is against the manifest weight of the evidence. The crux of his argument is that the evidence presented at trial was circumstantial and that the trial court drew impermissible inferences from that evidence. He argues that the greater weight of the

evidence does not support his conviction for theft. He also argues that the weight of the evidence does not support his conviction for a firearm specification. This Court disagrees.

{¶13} When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 9th Dist. Summit No. 29290, 2019-Ohio-3970, ¶ 26. This Court "will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version." *State v. Warren*, 9th Dist. Summit No. 29455, 2020-Ohio-6990, ¶ 25, quoting *State v. Tolliver*, 9th Dist. Lorain No. 16CA010986, 2017-Ohio-4214, ¶ 15.

{¶14} "Circumstantial and direct evidence inherently possess the same probative value." *State v. Smith*, 9th Dist. Lorain No. 99CA007399, 2000 WL 1675052, *6 (Nov. 8, 2000), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus. A criminal conviction, "can be based entirely or in part on circumstantial evidence." *State v. Simko*, 9th Dist. Lorain No. 18CA011267, 2021-Ohio-1447, ¶ 24, quoting *State v. Schulman*, 10th Dist. Franklin No. 19AP-566, 2020-Ohio-4146, ¶ 45. "[D]irect evidence of a fact is not required, and circumstantial evidence may be more certain, satisfying, and persuasive than direct evidence." *State v. Jackson*, 57 Ohio St.3d 29, 38 (1991).

{¶15} Santana argues in his brief that his conviction for theft was "based on circumstantial evidence at best and did not rise to the level of sufficient evidence." Santana argues that: (1) no

testimony was presented of anyone who observed the theft of the firearm, (2) no one observed him in possession of the firearm, (3) that the fingerprint evidence proffered by the State fails to establish that Santana was ever in the vehicle, nor in possession of the firearm, and (4) someone else could have taken the firearm. Santana argues that based upon the circumstantial evidence provided by the State, his conviction for theft is against the weight of the evidence. Santana's arguments focus on what he characterizes as missing evidence and other reasonable inferences that could be drawn from the evidence that point away from him as the thief.

{¶16} Upon review of the record and the arguments presented, this Court concludes Santana has not shown that this is an exceptional case in which the evidence weighs heavily against his conviction for theft. *See Croghan*, 2019-Ohio-3970, at ¶ 26. The State set forth evidence from which the trier of fact could reasonably conclude that Santana, purposely, without the consent of the owner, obtained the firearm from the truck. M.C. testified that he had power washed his truck the weekend prior to the reported theft. After going fishing, he parked his truck in his driveway on Sunday evening. The next morning, M.C. testified that he had noticed his Glock 43 was missing and called the police. M.C. went to the police department where fingerprints were lifted from the truck. The State presented evidence that the fingerprints on the vehicle belonged to Santana. The BCI agent testified that there were many fingerprints on the door, implying it was not a passing touch. M.C. did not know Santana and had not given him permission to enter his truck or take his firearm. Officer Descenzo and Lt. Bockelman both testified about a traffic stop involving Santana the morning of the reported theft. That traffic stop was initiated because of suspicious driving indicative of someone breaking into cars or houses.

{¶17} Upon review of the evidence, this Court concludes that Santana has not shown that the trial court lost its way when it chose to believe the State's evidence and found him guilty of

theft. The trial court, as the trier of fact, was in the best position to evaluate the credibility of the testimony and evidence and was free to believe the State's theory of the events leading to the theft of the firearm. *See State v. Shank*, 9th Dist. Medina No. 12CA0104-M, 2013-Ohio-5368, ¶ 29. While the evidence presented by the State was circumstantial, its probative value was not less than if it had been direct evidence. *Smith*, 2000 WL 1675052 , at *6. Santana's conviction can be based entirely on circumstantial evidence. *Simko*, 2021-Ohio-1447, at ¶ 24. Accordingly, this Court rejects Santana's argument that his conviction for theft is against the manifest weight of the evidence.

{¶18} Santana also argues that the manifest weight of the evidence did not support his firearm-specification conviction.

{¶19} The one-year mandatory firearm specification is described in R.C. 2941.141(A), which states: "[T]he offender had a firearm on or about the offender's person or under the offender's control while committing the offense." "Firearm" is defined in R.C. 2923.11(B)(1) as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm which is inoperable but which can readily be rendered operable." R.C. 2923.11(B)(2) provides that "[w]hen determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm." Thus, to be convicted of a firearm specification, the State must prove that the firearm existed, was under the offender's control, and that it was operable at the time of the offense. *State v. Murphy*, 49 Ohio St.3d 206, 208-209 (1990). The trier of fact may consider all relevant facts and circumstances surrounding the crime when determining

whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable. *State v. Thompkins*, 78 Ohio St.3d 380, 385 (1997). "[F]irearm penalty-enhancement specification[s] can be proven * * * by circumstantial evidence." *Id*.

{¶20} As with the conviction for theft, Santana argues in his brief that his conviction for the firearm specification was based on circumstantial evidence. He argues that: (1) the firearm was never recovered and therefore could not be tested by law enforcement, (2) there was no proof offered that the firearm was operable at the time it went missing, and (3) the record is silent about a discharge of the firearm. Santana asserts that the State failed to provide sufficient evidence that the firearm was operable.

{¶21} Upon review of the record and the arguments presented, this Court concludes Santana has not shown that this is an exceptional case in which the evidence weighs heavily against his conviction for the firearm specification. *See Croghan*, 2019-Ohio-3970, at ¶ 26. The State set forth evidence from which the trier of fact could reasonably conclude that Santana took control of the firearm and that the firearm was operable. "At the time [Santana] took the gun, he was committing a theft, and he obviously had the gun 'on or about [his] person or under [his] control.'" *State v. Campbell*, 90 Ohio St.3d 320, 331 (2000). M.C. testified that he obtained a concealed carry permit in 2016 and that he most recently fired his firearm within "a month or so" of reporting his firearm stolen. The evidence that M.C. kept the gun in his truck, coupled with the evidence he had a concealed handgun license, reasonably demonstrated that the firearm was operable. *State v. Staten*, 10th Dist. Franklin No. 18AP-48, 2018-Ohio-4681, ¶ 13 ("The purpose of carrying a firearm legally with a concealed handgun license is to have it readily available as a means for

defense, but a firearm that is not operable or cannot be readily rendered operable fails to serve that purpose.").

**{¶22}** This Court concludes that Santana has not shown that the trial court lost its way when it chose to believe the State's evidence and found him guilty of the firearm specification. Accordingly, this Court rejects Santana's argument that his conviction for the firearm specification is against the manifest weight of the evidence.

**{¶23}** Santana's sole assignment of error is overruled.

### III.

**{¶24}** The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

                                   _____

                                   JILL FLAGG LANZINGER
                                   FOR THE COURT

SUTTON, P. J.
CARR, J.
CONCUR.

APPEARANCES:

DENISE G. WILMS, Attorney at Law, for Appellant.

J.D. TOMLINSON, Prosecuting Attorney, and LINDSEY C. POPROCKI, Assistant Prosecuting Attorney, for Appellee.