**[Cite as *State v. Allen*, 2025-Ohio-2728.]**

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

v.

BRANDON M. ALLEN, SR.,

    DEFENDANT-APPELLANT.

CASE NO. 1-23-73

OPINION AND
JUDGMENT ENTRY

---

**Appeal from Allen County Common Pleas Court**
**Trial Court No. CR2022 0085**

**Judgment Affirmed**

**Date of Decision: August 4, 2025**

---

**APPEARANCES:**

    *Russell Patterson* **for Appellant**

    *John R. Willamowski, Jr.* **for Appellee**

**MILLER, J.**

{¶1} Defendant-appellant, Brandon M. Allen ("Allen"), appeals the November 3, 2023 judgment of sentence of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This cases arises from a robbery of The Union Bank in Lima, Allen County, Ohio on the morning of March 8, 2022. Allen, wearing dark clothing, a mask, and gloves entered the bank, slid a demand note to the teller, and left the bank with over $3,000 in cash. Law enforcement quickly identified Allen as the suspect and, later that day, arrested him on charges relating to the incident.

{¶3} On April 14, 2022, the Allen County Grand Jury indicted Allen on a single count of aggravated robbery in violation of R.C. 2911.01(A)(1), (C), a first-degree felony. The count also included a firearm specification pursuant to R.C. 2941.145(A) and a repeat-violent-offender ("RVO") specification pursuant to R.C. 2941.149(A). At his arraignment on April 22, 2022, Allen pleaded not guilty to the charge and specifications in the indictment.

{¶4} A jury trial was held on October 31 through November 2, 2023. At the trial, the State presented evidence that at 9:53 a.m. on March 8, 2022, a man wearing dark-colored clothing entered The Union Bank in Lima, Allen County, Ohio and handed the bank teller, Katelyn Shook ("Shook"), a demand note written on the back of a check stating "I HAVE a gun. Please place All $$ from draw[er] & lock box

safe on Counter, <u>NO Die</u> [sic] packs or <u>silent alrams</u> [sic] or I will Shoot." (Underline and capitals sic.) (State's Ex. No. 5). Upon receiving the note, Shook gave the man money totaling $3,076.00, which he put into a dark-colored plastic bag.

{¶5} Shook testified that she "100% believed" that the man had a gun. (Oct. 31, 2023-Nov. 2, 2023 Tr. at 185). She recalled the man repeatedly reach into his pocket and "fiddling" as though to remind her that the gun was there. (*Id.*). Shook testified that she felt "absolutely terrified" for her life. (*Id.*). However, Shook admitted that she did not actually see the firearm.

{¶6} Several surveillance cameras recorded the events from different angles, several of which were shown at the trial. (State's Ex. 137). The security camera positioned behind Shook captured the events from her point of view. The surveillance video is consistent with Shook's testimony. Notably, when the man reaches the counter, he intentionally keeps his hands below the counter and produces a checkbook from which he removes a check. The man raises his hand above the counter and pushes a check with the demand note on the back across the counter toward Shook. The man then puts his hand below the counter and appears to put his hands back in his pocket.

{¶7} A camera located to the side of bank showed the man's hand movements more clearly. The video depicts the man reach into his left front pant pocket to remove the checkbook containing the demand note. After placing the note

on the counter and sliding it toward Shook, the man returned the checkbook to his right pant pocket. As Shook began gathering the money, Allen reached his hand into his left pant pocket and removed a black plastic bag. He then held the plastic bag with his left hand below the counter and used his right hand to place the money he received from Shook into the bag.

{¶8} The demand note was written on the back of a check from another local bank. Although the name and address of the account holder had been crossed out with black marker, the routing number and checking account number were still visible, and law enforcement was quickly able to identify the account holder as "Brandon Allen." Approximately six hours later, Allen was arrested for the robbery. Law enforcement did not recover a firearm.

{¶9} At the conclusion of the trial, the jury returned verdicts finding Allen guilty of the aggravated robbery charge and the accompanying firearm specification. The trial court then proceeded with a hearing regarding the RVO specification and the court found Allen guilty thereof.

{¶10} The trial court then proceeded immediately to sentencing where it sentenced Allen to an indefinite term of 11 years to 16 ½ years in prison on Count One. The trial court also sentenced Allen to three years in prison on the firearm specification and ten years in prison on the RVO specification to be served consecutively to each other and consecutively to the sentence on Count One. The following day, the trial court filed its judgment entry of conviction and sentence.

{¶11} Allen filed a notice of appeal on November 27, 2023. He raises two assignments of error for our review, which we elect to address together.

### First Assignment of Error

**The trial court violated Mr. Allen's due-process rights when it convicted him of aggravated robbery and sentenced him pursuant to an accompanying firearm specification without legally sufficient evidence that he possessed a firearm. (Tr. Vol. IV at 691; 11/03/2023 Judgment at 4-5)**

### Second Assignment of Error

**Mr. Allen's aggravated-robbery conviction and firearm specification are not supported by the manifest weight of the evidence. (Tr. Vol. IV at 690; 11/03/2023 Judgment at 4.)**

{¶12} In his first assignment of error, Allen argues that his due-process rights were violated when the jury convicted him of aggravated robbery and the accompanying firearm specification without sufficient evidence that he actually possessed a firearm. In his second assignment of error, Allen argues that his convictions for aggravated robbery and the firearm specification were against the manifest weight of the evidence.

*Standards of Review*

{¶13} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997), *superseded by statute on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, we address each legal concept individually.

**{¶14}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Consequently, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.).

**{¶15}** On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'[w]eigh the evidence and all reasonable inferences, consider[] the credibility of witnesses and determine[] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*,

10 Ohio St.2d 230, 231 (1967). When applying the manifest weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

*Allen's Convictions*

{¶16} The jury found Allen guilty of aggravated robbery and a firearm specification.[1] The offense of aggravated robbery codified in R.C. 2911.01(A)(1), provides that "[n]o person, in attempting or committing a theft offense, as defined in [R.C. 2913.01], or in fleeing immediately after the attempt or offense, shall . . . "[h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]" R.C. 2911.01(A)(1).

{¶17} Allen was also convicted of a gun specification which required the State to prove, beyond a reasonable doubt, that Allen "had a firearm on or about [his] person or under [his] control while committing the offense" of aggravated robbery and "displayed the firearm, brandished the firearm, indicated that [he] possessed the firearm, or used it to facilitate the offense." R.C. 2941.145(A). The term "firearm" is defined as "any deadly weapon capable of expelling or propelling

---

[1] Allen does not challenge the trial court's findings with respect to his RVO specification.

one or more projectiles by the action of an explosive or combustible propellant." R.C. 2923.11(B)(1); *see also* R.C. 2941.145(F) ("[a]s used in this section, 'firearm' has the same meaning as in section 2923.11 of the Revised Code"). That term "includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." *Id.* Thus, to support a firearm specification, the State must also "'prove beyond a reasonable doubt that the firearm was operable or could readily have been rendered operable at the time of the offense.'" *State v. Elliott*, 2022-Ohio-3778, ¶ 51 (3d Dist.), quoting *State v. Staten*, 2018-Ohio-4681, ¶ 11 (10th Dist.). The deadly-weapon element of aggravated robbery likewise requires the state to prove beyond a reasonable doubt that the offender possessed an operable firearm. *State v. Brown*, 2019-Ohio-3349, ¶ 12 (1st Dist.).

{¶18} "When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm." R.C. 2923.11(B)(2). This includes explicit or implicit threats made by the person in control of the firearm. *Elliott* at ¶ 54; *Thompkins*, 78 Ohio St.3d at 384. When a defendant states he has a gun and will use it, "a reasonable trier of fact can infer both the existence and the operability of a gun." *Elliott* at ¶ 61.

*Analysis: Sufficiency of the Evidence*

**{¶19}** With respect to his aggravated robbery and firearm specification convictions, Allen contends that his convictions are against the manifest weight of the evidence because the State did not present sufficient evidence that Allen possessed a firearm. Allen concedes that the evidence was sufficient to demonstrate that he represented that he had a firearm, but complains the evidence was not sufficient for the jury to find that Allen actually did possess a firearm. We disagree.

**{¶20}** Allen alleges that the security camera video of the robbery contradicts Shook's testimony that Allen repeatedly reached into his pocket in an effort to draw her attention to the gun in his pocket. Allen contends that because the gun was not visible to the teller or in the security video and was never recovered by investigators, the State did not present evidence from which the jury could find that he possessed a firearm while committing the robbery.

**{¶21}** In support of his position, Allen relies heavily on several cases in which the defendant indicates possession of a firearm, but other evidence contradicts his claim. Most notably, *State v. Brown*, where Brown entered a store with a black bag over his left hand, extended his left arm "like he was holding a weapon," and directed everyone to get on the ground. *State v. Brown*, 2019-Ohio-3349, ¶ 4-7. He stated, "I'm not trying to harm anybody, but if you do anything, then I will." *Id.* at ¶ 5. The witnesses, believing that the robber possessed a weapon underneath the bag complied. *Id.* In that case, the appellate court overturned

Brown's aggravated robbery conviction along with its attendant firearm specification on the grounds that the direct evidence in the surveillance video "negates the inferences that might be drawn from the circumstantial evidence." *Id.* at ¶ 14. Specifically, the video showed Brown removing his hand, without any gun, from the bag after the witnesses dropped to the floor and transferring the bag onto his other hand. *Id.* Further, when one of the victims stood up and emptied the contents of the cash register into his bag, he "twice held the bag open wide with both hands (much like trick or treater)" for the victim to put the money in the bag, and he did not have a gun in either hand. *Id.* The appellate court reasoned that "[t]he only place the gun (if it existed) could have disappeared to was in the bag, but [the victim] was looking directly into the bag and presumably would have testified that she saw the weapon if it were there." *Id.* The appellate court held that because "the video footage confirms that Mr. Brown did not possess a gun during the robbery[,]" "a rational trier of fact could not have found that the state proved beyond a reasonable doubt that deadly-weapon element of aggravated robbery or the firearm specification." *Id.* at ¶ 14-15.

{¶22} Allen argues that the video surveillance in the instant case contradicts Shook's testimony and confirms that he does not possess a gun during the robbery. Specifically, he argues that although he reached into his pocket (where Shook assumed the gun was housed) on several occasions during the robbery, that the side view of the surveillance video confirms that he was reaching into his pocket for a

bag in which to deposit the money from the teller rather than reaching for a firearm. However, after reviewing the surveillance video in concert with the testimony, we do not find that the surveillance video indicates that Allen did not possess a weapon during the bank robbery.

{¶23} Although the surveillance video does depict Allen reaching into his pocket and pulling out the demand note and a black plastic bag on separate instances, his actions fail to definitively rule out the possibility that Allen also had a firearm in his pocket. Allen is depicted wearing bulky clothing, the pockets of which could have contained the items he removed in addition to a firearm. Notably, unlike in *Brown*, where a witness could see to the bottom of the bag, here, neither Shook nor the video could see into Brown's pockets. Furthermore, although Allen's actions led Shook to assume that the firearm was housed in Allen's pocket, even if the firearm was not in Allen's pant or jacket pocket, it could also have been housed elsewhere on his person. Thus, unlike the cases Allen references, the video evidence in the instant case does not definitely demonstrate that Allen does not have a gun.

{¶24} Moreover, the fact that the gun was not recovered does not preclude the jury from finding that Allen possessed a firearm. When a firearm is not recovered, the State may prove the element with circumstantial evidence. *Brown* at ¶ 12. First, we note that Allen was not arrested for nearly six hours following the crime. In that time, he had changed into different clothing and ran errands such as

bringing approximately $1,100 to his girlfriend's residence. Accordingly, Allen had both the time and opportunity to dispose of the weapon prior to his arrest.

{¶25} Circumstantial evidence used to prove the offender's possession of an operable firearm "may include the representations and actions of the person with control of the firearm." *In re A.Y.*, 2022-Ohio-739, ¶ 27 (1st Dist.), citing R.C. 2923.11(B)(2). "'A witness's belief that the accused possessed a gun, coupled with evidence of the accused's intent to create and use that belief for his own criminal purpose, is sufficient to prove a firearm specification.'" *Id.*, quoting *In re D.W.*, 2020-Ohio-2707, ¶ 19 (1st Dist.). Here, the demand note which indicated that (1) Allen possessed a gun and (2) he would use the gun if Shook did not follow his instructions was clearly crafted with the intention of leading Shook to believe that he possessed an operable firearm. Importantly, Allen kept his hands below the counter where Shook could not see them, which, from her vantage point, supported her belief he possessed a handgun. Furthermore, these representations actually did cause Shook to believe that he possessed a gun and would use it if she did not comply with his demands. *See State v. Obsaint*, 2007-Ohio-2661, ¶ 19 (1st Dist.) ("Obsaint's own written admission that he had a gun, in a note that made repeated references to shooting the teller, was sufficient circumstantial evidence to show that he possessed an operable firearm at the time that he committed the robbery."); *State v. Greathouse*, 2007-Ohio-2136, ¶ 20 (2d Dist.) (finding sufficient evidence to support a firearm conviction where, although the victim never saw the gun,

defendant told the victim "he had a gun and would shoot her and dump her body beside the car" if she did not comply). Thus, we find that, when viewed in a light most favorable to the State, a rational trier of fact could have found that Allen possessed an operable firearm.

{¶26} Allen's first assignment of error is overruled.

*Analysis: Manifest Weight*

{¶27} Allen challenges the manifest weight of the evidence supporting the finding that he possessed an operable firearm was against the manifest weight of the evidence by challenging the credibility of Shook's testimony. Allen contends that Shook's testimony that the man reached into his pocket for a gun "was emotionally powerful but factually wrong" and was "effectively unchallenged." (Appellant's Brief at 17). Allen claims that as a result of Shook's testimony "the jury mistakenly discounted other evidence showing that Mr. Allen did not actually possess a firearm." (*Id.*).

{¶28} However, "[a] verdict is not against the manifest weight of the evidence because the finder of fact chose to believe the State's [evidence] rather than the defendant's version of the events." *State v. Martinez*, 2013-Ohio-3189, ¶ 16 (9th Dist.). "'Although we review credibility when considering the manifest weight of the evidence, the credibility of witnesses is primarily a determination for the trier of fact.'" *State v. Cox*, 2022-Ohio-571, ¶ 20 (3d Dist.), quoting *State v. Banks*, 2011-Ohio-5671, ¶ 13 (8th Dist.), citing *DeHass*, 10 Ohio St.2d at paragraph

one of the syllabus. "'The trier of fact is best able to "view the witnesses and observe their demeanor, gestures[,] and voice inflections, and use these observations in weighing the credibility of the proferred testimony."'" *State v. Brentley*, 2023-Ohio-2530, ¶ 33 (3d Dist.), quoting *Banks* at ¶ 13, quoting *State v. Wilson*, 2007-Ohio-2202, ¶ 24, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80-81 (1984).

{¶29} Notably, the jury had the opportunity to view the surveillance video of the bank robbery both from Shook's vantage point and from the side and was instructed in the lesser-included offense of robbery. Furthermore, in his closing argument, Allen raised the alleged inconsistencies. Yet, the jury found Allen guilty of aggravated robbery and the firearm specification. "[I]t is within the province of the jury to parse out the credible portions of witnesses' testimonies." *State v. Waller*, 2023-Ohio-493, ¶ 20 (3d Dist.). The record sufficiently supports the jury's credibility assessments, and we find no basis to alter its analysis.

{¶30} Having examined the record, we do not conclude that the jury lost its way when it returned guilty verdicts with respect to the aggravated robbery charge and the associated firearm specification. *See State v. Passmore*, 2023-Ohio-3209, ¶ 39-40 (3d Dist.). Accordingly, Allen's second assignment of error is overruled.

*Conclusion*

**{¶31}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the Allen County Court of Common Pleas.

***Judgment Affirmed***

**ZIMMERMAN and EPLEY, J.J., concur.**

Case No. 1-23-73

# JUDGMENT ENTRY

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

_____
Mark C. Miller, Judge


_____
William R. Zimmerman, Judge


_____
Christopher B. Epley, Judge


**\*\* Judge Christopher B. Epley of the Second District Court of Appeals, sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.**


DATED:
/jlm

-16-